# EXHIBIT L

**AS** **AMERICAN**
**SAFETY**

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX ☎ (770) 955-8339

*RISK RETENTION GROUP, INC.*

POLICY NUMBER:   XGI 00-1462-001

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| Broker - Crump E&S of San Francisco Ins. Services, Inc. | Producer - Mr. Peter Scott |
|---|---|

| | |
|---|---|
| **Named Insured:** | **Rylock Company Limited** |
| **Mailing Address:** | **P.O. Box 528** |
| | **Stockton, CA 95201** |
| **Policy Period:    From:** | **Mar. 1, 00    To:    Mar. 1, 01    At 12:01 A.M. Time At** |
| **Your Mailing Address Shown Above** | |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | |
|---|---|
| Each Occurrence Limit | $ 1,000,000.00 |
| Fire Damage Limit - Any one fire | $    50,000.00 |
| Medical Expense Limit - Any one person | $    Excluded |
| Personal & Advertising Injury Limit  - Any one person or organization | $ 1,000,000.00 |
| General Aggregate Limit | $ 2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000.00 |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW. |
| RETROACTIVE DATE:     "Does Not Apply" |
| (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|

FORM OF BUSINESS:

[ ] Individual        [ ] Partnership        [ ] Joint Venture
[ ] Limited Liability Company
[x] Organization, Including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)

Business Description:        Aluminum Window & Door Manufacturer

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE: THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

AIU 0547



**AMERICAN SAFETY**

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX  ☎  (770) 955-8339

*RISK RETENTION GROUP, INC.*

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| **LOCATION NUMBER** | **ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY** |
| | As on file with application dated 2/10/2000 |
| | |

### CLASSIFICATION AND PREMIUM

| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | | | Prem/Ops | Prod/Comp Ops | Prem/Ops | Prod/Comp Ops |
| | Door/Window Manufacturer (other than wood) | 52134 | $15,836,000 ✓ | Included | $23.68 ✓ per $1000 est. receipts | Included | $375,000 |

| | | |
|---|---|---|
| State Tax or Other (if applicable) | $ | |
| Total premium (Subject to Audit) | $ 375,000 ✓ | |
| Premium shown is payable:   **At Inception;** | $ | |
| **At Each Anniversary** | $ 375,000 ✓ | |
| (If policy period is more than one year and premium is paid in annual installments) | | |

| Audit Period (If Applicable | X | Annually | Semi-Annually | Quarterly | Monthly |
|---|---|---|---|---|---|
| | | | | | |

### ENDORSEMENTS

**ENDORSEMENTS ATTACHED TO THIS POLICY:**

| | | | |
|---|---|---|---|
| CG 00 01 07 98 ✓ | ES 98 01 08 99 ✓ | ES 98 11 08 99 ✓ | ES 98 30 10 99 ✓ |
| CG 20 10 11 85 ✓ | ES 98 02 08 99 ✓ | ES 98 13 08 99 ✓ | ES 98 38 02 00 ✓ |
| CG 20 15 11 88 ✓ | ES 98 04 08 99 ✓ | ES 98 14 08 99 ✓ | ES 98 43 03 00 ✓ |
| CG 24 04 11 85 ✓ | ES 98 05 08 99 ✓ | ES 98 18 09 99 ✓ | ES 98 44 03 00 ✓ |
| IL 00 17 11 85 ✓ | ES 98 06 08 99 ✓ | ES 98 24 09 99 ✓ | |
| IL 00 21 11 94 ✓ | ES 98 08 08 99 ✓ | ES 98 28 10 99 ✓ | |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| | |
|---|---|
| Endorsement Effective:     March 1, 2000 | Countersigned By: |
| Named Insured:     Rylock Company Limited | *Fred J Pinckney* |
| | **(Authorized Representative)** |

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.

NOTICE: THIS POLICY IS ISSUED BY YOUR RISK RETENTION GROUP.  YOUR RISK RETENTION GROUP MAY NOT BE SUBJECT TO ALL OF THE INSURANCE LAWS AND REGULATIONS OF YOUR STATE.  STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR YOUR RISK RETENTION GROUP.

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**AIU 0549**

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**AIU 0550**

(d) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing opera-tions if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, con-tractor or subcontractor. However, this sub-paragraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubri-cants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions neces-sary for the operation of "mobile equip-ment" or its parts, if such fuels, lubri-cants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the in-tentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations be-ing performed by such insured, contrac-tor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being per-formed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or sub-contractors working directly or indirectly on any insured's behalf are performing opera-tions if the operations are to test for, moni-tor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a govern-mental authority for damages because of testing for, monitoring, cleaning up, remov-ing, containing, treating, detoxifying, or in any way responding to, or as-sessing the effects of, "pollutants".

However, this paragraph does not apply to li-ability for damages because of "property dam-age" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

AIU 0551

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (4) Arising out of a criminal act committed by or at the direction of any insured;

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

   (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

AIU 0553

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

     (a) Cooperate with us in the investigation, settlement or defense of the "suit";

     (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     (c) Notify any other insurer whose coverage is available to the indemnitee; and

     (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

AIU 0554

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

    (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

**AIU 0555**

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

AIU 0556

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

         (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

         (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

      (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**AIU 0557**

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

**AIU 0558**

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

   (1) The injury or damage arises out of:

      (a) Goods or products made or sold by you in the territory described in **a.** above; or

      (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker":

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**AIU 0560**

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

AIU 0561

POLICY NUMBER: XGI 00-1462-001                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**
Those persons or organizations as on file with the company requiring in a written contract with the Named Insured to be named as an additional insured and where such written contract specifies the use of the ISO CG 20 10 11 85 Endorsement Form.

Effective Date:  The effective date of this endorsement shall be the later of the date of Issuance of this Endorsement or the start date of the project, but in no event earlier than the Policy Inception Date.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

AIU 0562

*per kinder*

POLICY NUMBER: XGI 00-1462-001

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Vendor):**

**Your Products:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**AIU 0563**

CG 20 15 11 88    *per binder*    Copyright, Insurance Services Office, Inc., 1986,    Page 1 of 1

POLICY NUMBER:  XGI 00-1462-001

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

**As On File With Company**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We waive any right of recovery we may have against the person or organization shown in the Schedule because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization. The waiver applies only to the person or organization shown in the Schedule.

**AIU 0564**

Page 1 of 1

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**AIU 0565**

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

AIU 0566

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)  Any "nuclear reactor";

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

AIU 0567

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ASRRG - ES 98 01 08 99

### SELF-INSURED RETENTION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

### SCHEDULE

| Amount and Basis of Self-Insured Retention | |
|---|---|
| $ | per claim |
| $ 50,000 | per occurrence |

$1,250,000 Aggregate Including Expense

**Application of Endorsement:** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the self-insured retention applies to all damages, however caused):

### NO LIMITATIONS

1.  Our obligation under the policy to pay damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B to you or on your behalf applies only to the amount of damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention.

    As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall

pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in the handling or settlement of any such incident, "occurrence" or "suit".

2.  The self-insured retention amounts stated in the Schedule apply as follows:

    A.  **Per Claim Basis** - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" sustained by any one person or organization as the result of any one "occurrence" or offense.

    B.  **Per Occurrence Basis** - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B because of "bodily injury", "property damage" or "personal and advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0568**

end_01.doc

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 02 08 99**

**ABSOLUTE ASBESTOS EXCLUSION**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

A.  This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the mining, manufacture, handling, use, distribution, sale, existence, abatement, "enclosure", "encapsulation" or removal of "asbestos" in any form.

We have no duty to defend you or to investigate any "occurrence", offense or "suit" against you which arises out of "asbestos" in any form. If you investigate or defend any such "occurrence", offense or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

B.  SECTION V. - DEFINITIONS is amended to add the following additional definitions:

1.  "Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

2.  "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

3.  "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4.  "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0569**

*per binder*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 04 08 99**

~~EMPLOYMENT PRACTICES EXCLUSION~~

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

1. Any person arising out of any:
   a. Refusal to employ that person;
   b. Termination of that person's employment;
   c. Refusal or failure to promote that person;
   d. Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
   e. Labor contract or agreement, or any employee benefit, or benefit plan or program, including, but not limited to, liability under the National Labor Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, or any workers' compensation or similar federal or state laws.

2. The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the employment-related practices described in paragraphs a., b., c., d. or e. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and
2. To any obligation of the insured to share damages with or repay someone else who must pay damages because of the injury.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

*per binder*

**AIU 0570**

Copyright© 1999, American Safety Risk Retention Group, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 05 08 99**

**MEDICAL PAYMENTS EXCLUSION**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION  I,  COVERAGE  C.  -  MEDICAL PAYMENTS is deleted in its entirety and any references to it in the Coverage Part do not apply.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0571**

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 06 08 99**

## OTHER INSURANCE AMENDATORY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

Par. 4., Other Insurance is hereby amended as follows:

4. Paragraph a., Primary Insurance; Paragraph b., Excess Insurance and Paragraph c., Method of Sharing are deleted in their entirety and the following language is inserted in lieu thereof:

a. This insurance is primary, except when b. below applies.

b. This insurance is excess over any other insurance that is valid and collectible insurance available to the insured or any Additional Insured whether such insurance is primary, excess, contingent or on any other basis and regardless of the nature, kind, date of issuance or limits of such other insurance available to the insured or any Additional Insured. Our obligation under this policy shall not arise until the limits of such other insurance are exhausted.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0572**

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 08 08 99**

**PRE-EXISTING INJURY OR DAMAGE EXCLUSION -- FORM A**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This insurance does not apply to:

1.  Any "occurrence", incident or "suit" whether known or unknown to any officer of the Named Insured:
    a.  which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
    b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2.  Any damages arising out of or relating to "bodily injury", "property damage" or "personal and advertising injury" which are known to any officer of any insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0573**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 11 08 99**

## DATE RECOGNITION EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or related to, whether directly or indirectly, any of the following:

1. Any actual or alleged failure, modification to, malfunction or inadequacy of:
   a. any of the following, whether belonging to any insured or to others or whether recommended, sold, produced, designed or developed by any insured or others:
      (1) computer hardware, including micro-processors;
      (2) computer application software;
      (3) computer operating systems and related software;
      (4) computer networks;
      (5) micro-processors, semi-conductors, or digital, analog or integrated devices not part of any computer systems; or
      (6) any other computerized or electronic equipment or components; or

   b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 1.a. of this Endorsement.

   due to the inability to correctly recognize, process, distinguish, interpret or accept any date, including, but not limited to the change to the year 2000 and beyond, or the leap year in the year 2000 or beyond.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. of this Endorsement.

   This exclusion applies regardless of any other cause, event or incident that contributes concurrently or in any sequence to the "bodily injury", "property damage" or "personal and advertising injury". This exclusion also applies regardless of any changes or modifications made at any time to any of the items listed in Paragraph 1.a. to correct or attempt to correct the inability to recognize, process, distinguish, interpret or accept any date.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0574**

*Per Linde 1*

Copyright© 1999 American Safety Risk Retention Group, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 13 08 99**

ENDORSEMENT -- WAIVER OF SUBROGATION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

| | |
|---|---|
| **Name of Person or Organization:** | Those parties requiring a waiver of subrogation in a written contract with the Named Insured. |
| **Name of Project:** | Those projects reported to, in writing, and on file with the Company. |
| **Location of Project:** | The specific location of those projects on file with the Company. |

In consideration of the payment of premiums, we waive our rights to subrogation (excluding indemnity or contribution), against the person or organization named above in connection with the sole negligence of the Named Insured in the performance of "your work" on the project described below, subject to the following conditions and exclusions.

Subrogation shall not be waived with respect to any liability arising directly or indirectly out of any of the following actions of persons or organizations named above:
1. "Professional services" on or in connection with the Project;
2. Modifying or changing the Project specifications without the express written consent of the insured; and
3. Any activities beyond the scope of monitoring the progress of the insured on the Project.

This waiver of subrogation shall apply solely to our rights of subrogation on the Project referenced and shall not, directly or indirectly apply to a waiver of any rights of indemnity or contribution.

As used in this Endorsement, the term "professional services" shall mean:
a. The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
b. Supervisory, inspection, training or engineering services; or
c. Commercial or industrial hygiene, air monitoring, "hazardous substance" testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0575**

Copyright© 1999, American Safety Risk Retention Group, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 14 08 99**

CROSS CLAIMS OR SUITS EXCLUSION

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

Any claim or "suit" for damages by any insured against another insured.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0576**

Copyright© 1999  American Safety Risk Retention Group, Inc.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ASRRG - ES 98 18 09 99

### PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to any punitive, special or exemplary damages.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0577**

Copyright© 1999  American Safety Risk Retention Group, Inc.

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 24 09 99**

**INCIDENTAL SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE ENDORSEMENT**

*THE COVERAGE AFFORDED UNDER THIS ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE BASIS*

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" occurring prior to the expiration or cancellation date of the policy, whichever is earlier, and subsequent to the Retroactive Date, as set forth in this Endorsement, and where such "bodily injury" or "property damage" arises out of the actual "sudden" and "accidental" discharge, dispersal, release or escape of "specified pollutants" caused by your performance of those operations designated in the Classifications Section of the Declarations performed subsequent to the Retroactive Date set forth in this Endorsement and prior to the expiration or cancellation date of the policy, whichever is earlier.

The insurance afforded under this Endorsement applies only if a "claim" for damages because of "bodily injury" or "property damage" is first made against the insured and received by us in writing, in such written form as we may require, during the policy period or Optional Extended Reporting Period, if applicable. All "claims" or "suits" arising out of or related to the same "occurrence", circumstance, person or organization, or arising out of or related to similar or related "occurrences", circumstances, persons or organizations shall be considered as a single "claim" and will be deemed to have been made only at the time when such "claim" is first made against any insured and received by us in writing, in such written form as we may require.

B. The following exclusions are added to SECTION I, COVERAGE A., Par. 2. of the policy.

This insurance does not apply to:

1. "Claims" or "suits" arising out of or related to the discharge, release, escape, dispersal, contamination or exposure to "specified pollutants" in whatever form, which occurs after the completion of "your work".

2. "Claims" or "suits" arising out of or related to any "claim", "occurrence", incident or circumstance which occurred or of which the insured was aware prior to the Retroactive Date as set forth in this Endorsement.

3. "Claims" or "suits" arising out of or related to "hazardous substance remediation activities".

C. All coverage, including all "claim related costs", under this Endorsement shall be subject to a sublimit of $10,000 per "claim" and $10,000 total for all "claim(s)" regardless of the number of "claims", insureds, "suits", persons making "claims" or "suits" or certificates of insurance issued. The sublimit shall be included within and will reduce the overall policy General Aggregate.

D. The following definitions are added to SECTION V of the policy:

"Accidental" means activity or circumstances that are neither expected nor intended nor foreseeable, but rather, which occur by chance, abruptly or unexpectedly.

"Approved hazardous substance remediation activities" means the following specifically described activities:

Those activities, procedures or operations required to clean up, test, sample, analyze, monitor, detoxify, dispose, transport, load, unload, treat, dilute, remove, "encapsulate" or abate "hazardous substances", including but not limited to "asbestos abatement";

**AIU 0578**

"bioremediation"; "building decontamination"; "duct cleaning"; "emergency response"; "groundwater remediation"; "lead abatement"; "medical waste remediation"; "microbiological decontamination"; "soil incineration"; "soil remediation"; "storage tank cleaning"; "storage tank installation"; "storage tank removal"; "vapor extraction"; "waste incineration".

"Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

"Asbestos abatement" means all procedures and operations to prevent fiber release from "asbestos" containing or "asbestos" contaminated materials, and excludes "encapsulation" and "enclosure".

"Bioremediation" means the introduction of organisms to soil that is contaminated with "hazardous substances", where such organisms promote the natural degradation of such "hazardous substances".

"Building decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from a building or structure. "Building decontamination" does not include "duct cleaning".

"Caustics" means substances whose aqueous solutions have a pH level greater than 11 and are capable of burning, corroding, dissolving or eating away other materials by chemical reaction.

"Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class for damages because of "bodily injury", "property damage", "personal and advertising injury".

"Claim related costs" means all costs and expenses associated with the handling, defense and settlement of any "claim" or "suit", including, but not limited to, amounts for damages, medical expenses, attorneys' fees, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees, SUPPLEMENTARY PAYMENTS and any other "claim" or "suit" related costs or expenses.

"Degreasers" means any "solvents" used for the removal of grease and/or oils from a surface.

"Duct cleaning" means those activities, procedures or operations required to remove dust, impurities or "hazardous substances" from an air duct system.

"Emergency response" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" at a specific site or location, which are performed at the request of a client or governmental entity and are in response to emergency situations caused by the "sudden" and "accidental" discharge, dispersal, release or escape of "hazardous substances".

"Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

"Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Fertilizer" means any natural or synthetic material used to promote plant growth.

"Formaldehyde" means a colorless, gaseous compound, used to make synthetic resins such as embalming fluid, preservatives and disinfectants.

"Groundwater remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from water that is located below the surface of the land within the saturated zone of soil or rock. "Groundwater remediation" does not include "natural attenuation".

"Hazardous substances" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to acids, alkalis, animal/bird droppings, "asbestos", chemicals, fumes, "lead", "medical waste", mold/mildew/fungus, "radon", "refractory ceramic fibers", smoke, soot, vapor, waste or other dangerous, hazardous or toxic substances as listed by any state or federal agency

AIU 0579

or department. Waste includes any regulated waste, materials to be recycled, reconditioned or reclaimed.

"Heavy metals" means any of a group of metals with an atomic weight greater than sodium (22.9). "Heavy metals" do not include "lead".

"Hydrocarbons" means organic compounds that are principally obtained or derived from petroleum, tar and plant sources, consisting exclusively of the elements carbon and hydrogen.

"Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and any substances containing "lead".

"Lead abatement" means all procedures and operations required to clean up, detoxify, dilute, remove or abate "lead" or "lead" containing materials.

"Medical waste" means any substance that could harbor or transmit pathogenic organisms, including, but not limited to body tissues, organs, body parts, body fluids, blood, excreta, secretions, bandages and hypodermic needles.

"Medical waste remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "medical waste".

"Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate infectious microorganisms, fungi, bacteria and allergens.

"Natural attenuation" means the reduction of the toxicity, mobility, volume or concentration of "hazardous substances" in soil or groundwater through natural means that do not require human intervention.

"Pesticides" means any substance or mixture intended for preventing, destroying, repelling or mitigating any pest or vermin, or intended for use as a plant regulator, defoliant or desiccant.

"Petroleum-based materials" means "hydrocarbons" formulated as either a fuel or a lubricant for machinery or internal combustion.

"Polychlorinated biphenyls (PCBs)" means one of several aromatic compounds which are produced by attaching one or more chlorine atoms to a biphenyl molecule.

"Radon" means a colorless, odorless, tasteless gas produced from the radioactive decay of radium.

"Refractory-ceramic fibers" means continuous or non-continuous filaments made from ceramic material having those chemical and physical properties that allow them to be exposed to environments in excess of 1000°F (538°C).

"Soil incineration" means a combustion process with a heat recovery system utilized to remove or detoxify "hazardous substances" from soil.

"Soil remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from soil.

"Solvents" means any liquid used to dissolve solids or other liquids.

"Specified pollutants" means the following:

acids; alkalis; animal/bird droppings; "caustics"; "degreasers"; "fertilizer"; "formaldehyde"; "heavy metals"; "hydrocarbons"; mold/mildew/fungus; "pesticides"; "petroleum-based materials"; "polychlorinated biphenyls (PCBs)"; "refractory ceramic fibers"; "solvents".

"Storage tank cleaning" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from any aboveground or underground storage tank and any associated piping and dispensing equipment.

"Storage tank installation" means the physical installation of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to performance inspection and testing of the "tank system".

"Storage tank removal" means the physical removal of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to the performance of "storage tank cleaning".

"Sudden" means circumstances which happen abruptly without previous notice which are temporal and which are neither continuous nor repeated, nor which occur over a period of time.

"Tank system" means an aboveground or underground storage tank, connected piping, ancillary equipment and containment system.

"Vapor extraction" means the reduction of concentrations of "hazardous substances" contained

AIU 0580

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 28 10 99**

## ASSUMPTION OF LIABILITY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The American Safety Risk Retention Group, Inc., with respect to the interest of all parties in the policy to which this Endorsement is attached, agrees as follows:

1.  In the event that American Safety Risk Retention Group, Inc. shall, due solely to insolvency, fail to pay the amount of any loss which the interested party is entitled to recover under the limits, provisions and stipulations of the policy, American Safety Casualty Insurance Company shall be liable for such amount within ninety (90) days after receipt of written notice from such interested party setting forth the default of American Safety Risk Retention Group, Inc.  The undersigned covenants that this Endorsement takes precedence over any other agreement, contract or arrangement between them to the extent that American Safety Casualty Insurance Company shall not be subject to duplicate liability because of any payment(s) made under the provisions hereof and the further covenants that this Endorsement shall not be altered or modified while the policy is in force, except as hereinafter provided; that this is a valid and binding contract which he has a right to make and that the person signing below is duly authorized for that purpose.

2.  American Safety Casualty Insurance Company shall be subrogated, to the extent of any payment(s) hereunder, to all rights of recovery therefore against any person or organization.

3.  Should the policy to which this Endorsement relates be canceled for any reason whatsoever, this Endorsement shall be deemed to be canceled concurrently therewith.  This Endorsement may also be canceled by American Safety Risk Retention Group, Inc. or American Safety Casualty Insurance Company by mailing to the Named Insured and to any Mortgagee, Loss Payee or other interested party named in the policy at the address shown therein written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective. Copy of such notice shall also be furnished to American Safety Risk Retention Group, Inc.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

Agreed to by:  _____
                            Lloyd A. Fox

President - American Safety Casualty Insurance Company

**AIU 0581**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 38 02 00**

## AMENDMENT -- MINIMUM AND DEPOSIT PREMIUM

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

1. Paragraph b. of the PREMIUM AUDIT Commercial General Liability Conditions (SECTION IV) is replaced by the following:

   Premium shown in this Coverage Part is the minimum and deposit premium for the full policy term.

   At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the audit premium is less than the minimum and deposit premium, the minimum and deposit premium will apply, with no return premium payable to you.

2. Paragraph 5. of the CANCELLATION Common Policy Condition is replaced by the following:

   If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named Insured cancels, the refund will reflect either a 25% Minimum Earned Premium or a Short Rate charge, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0582**

Copyright© 1999, American Safety Risk Retention Group, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 43 03 00**

## BROAD NAMED INSURED ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

If the Named Insured under this policy is now or hereafter becomes a partner or member of any partnership or joint venture, the insurance afforded to the Named Insured under this policy also applies to the Named Insured in it's capacity as a partner or member of such partnership of joint venture, subject to the following provisions:

1.  With respect to such partnership or joint venture, this insurance applies only the Named Insured's liability as a partner or member of such partnership or joint venture for loss arising out of the conduct or operations of such partnership or joint venture; and

The following exclusion shall be added to the policy and shall apply to any and all Sections and coverage parts of the policy.

2.  If other valid and collectible insurance with any other insurer is available to the assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

*per binder*

**AIU 0583**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 44 03 00**

~~**GENERAL LIABILITY ENHANCEMENT ENDORSEMENT**~~

**THIS ENDORSEMENT MODIFIES INSURANCE UNDER THE FOLLOWING:**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

1. **NAMED INSURED**
   Under **SECTION II - WHO IS AN INSURED, ITEM 4.** is replaced in it's entirety with the following:

   4. Any organization over which you maintain owner-ship or a majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization, However,

      a. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization: and

      b. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

2. **KNOWLEDGE OF OCCURRENCE**

   Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 2. - DUTIES IN THE EVENT OF OCCURRENCE, CLAIM,** OR SUIT, the following is added;

   e. You must give us or our authorized representative prompt notice of an "occurrence", claim or loss only when the "occurrence", claim or loss is known to:

      1. You, if you are an individual;

      2. A partner, if you are a partnership;

      3. An executive officer or the employee designated by you to give such notice, if you are a corporation; or

      4. A manager, if you are a limited liability company.

3. **REVISED NOTICE OF OCCURRENCE**

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 2.- DUTIES IN THE EVENT OF OCCURRENCE, CLAIM, OR SUIT,** the following is added:

   f. Your rights under this policy will not be prejudiced if you fail to give us notice of an "occurrence" or claim, and that failure is solely due to your reasonable belief that the "bodily injury" or "property damage" is not covered under this policy.

4. **UNINTENTIONAL ERRORS OR OMISSIONS**

   Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 6. - REPRESENTATIONS,** the following is added;

   d. We will not disclaim coverage under this Coverage Form if you unintentionally fail to disclose all hazards existing as of the inception date of the policy.

5. **Premises Alienated**

   Under **SECTION I - COVERAGE A. ITEM 2 EXCLUSIONS,** paragraph J.(2) is replaced in it's entirety with the following:

   **(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises, and occurred from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

6. Under **SECTION III, LIMITS OF INSURANCE** paragraphs 3 and 7 are replaced by the following:

   3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily

*pen bender*

**AIU 0584**

Copyright© 1999  American Safety Risk Retention Group, Inc.

injury" and "property damage" and Coverage C for "bodily injury" included in the "products-completed operations hazard".

7. Subject to 5. above, the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person Is the greater of:

1. $10,000; or

2. The amount shown in the Declarations for Medical Expense Limit.

C. This provision 7. does not apply if **COVERAGE C. MEDICAL PAYMENTS** is not provided by this policy.

7. **INSURED CONTRACT**

In **SECTION V - DEFINITIONS**, definitions 9. "insured contract" is replaced by the following:

9. "Insured Contract" means:

a. A lease of premises, However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. An easement or license agreement;

d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work performed for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality)under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

An "Insured Contract" does not include that part of any contract or agreement:

a. That indemnification a railroad for "bodily injury" or "property damage" arising out of

construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1) Preparing, approving, failing to prepare or approve maps, shop drawings, opinions, reports, surveys, change orders, design, or drawings and specifications; or

(2) Giving directions or instructions, or failing to give them. If that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

d. That indemnifies any person or organization for damage by fire, lightning or explosion to premises rented or loaned to you.

8. **PROPERTY DAMAGE LIABILITY - ELEVATOR AND SIDETRACK AGREEMENTS**

Under **SECTION I, COVERAGE A., ITEM 2, EXCLUSIONS,** the following applies:

1. Paragraph (3), (4), and (6) of **EXCLUSION J** do not apply to "property damage" to property while on or being moved onto or off an elevator.

2. Exclusion k. does not apply to:

a. "Your product" while on , being moved onto or off an elevator; or

b. Liability assumed under a sidetrack agreement.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

9. **NON-OWNED WATERCRAFT**

Under **SECTION I COVERAGE A., ITEM 2. EXCLUSIONS,** item g., Paragraph (2)(a) is amended as follows;

**AIU 0585**

 Copyright© 1999  American Safety Risk Retention Group, Inc.

a.   Less than 51 feet long: and

This provision 10 applies to any person, who with your consent, either uses or is responsible for the use of a watercraft.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

## 10. BAIL BONDS/LOSS OF EARNINGS

Under  **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B:**

1.   Paragraph 2 is revised to increase the limit for the cost of bail bonds from **$250 to $1,000: and**

2.   Paragraph 4 is revised to increase the limit for loss of earnings from **$100 a day to $300 a day.**

## 11. ADDITIONAL INSUREDS - BY CONTRACT, AGREEMENT OR PERMIT

The following is added to **SECTION II - WHO IS AN INSURED:**

5.   a:   Any person or organization you are required by a written contract, agreement or permit to name as an insured is an Insured but only with respect to liability arising out of:

1.   "Your work" performed for that insured at the location designated in the contract agreement or permit; or

2.   Premises owned or used by you.

b.   This insurance does not apply unless the contract, agreement or permit is executed prior to the "bodily injury" or "property damage".

c.   This insurance does not apply to the rendering of or failure to render any professional services.

d.   This insurance is primary if that is required by the contract, agreement or permit.

## 12. FIRE, LIGHTENING OR EXPLOSION DAMAGE

The last paragraph of **SECTION I, COVERAGE A, 2. EXCLUSIONS** is replaced by the following:

a.   Exclusions c through n do not apply to damage by fire, lightning, or explosion to premises rented to you or temporarily occupied by you with

permission of the owner.  A separate limit of insurance applies to this coverage as described in **LIMITS OF INSURANCE (SECTION III).**

Paragraph 6 of **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

6.   Subject to **5.** above, the most we will pay for damages because of property damage to premises rented by you or temporarily occupied by you with permission of the owner resulting from fire, lightning or explosion, or any combination of the three, is the greater of:

a.   $300,000 or

b.   The amount shown next to Fire Damage Limit in the Declarations.

This provision 13 does not apply if Fire Legal Liability coverage is not provided by this policy.

## 13. INCIDENTAL MEDICAL MALPRACTICE LIABILITY

The definition of "bodily injury" is amended to include injury arising out of the rendering of or failure to render, during the policy period, the following services:

(A)   medical, surgical, paramedical, dental, xray or nursing service or treatment or the furnishing of food or beverages in connection therewith: or

(B)   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This insurance does not apply to any insured engaged in the business or occupation of providing any of the services described under (A) and (B) above except an employee of yours who provides medical, paramedical, surgical, dental, x-ray or nursing services.

## 14. ADDITIONAL INSURED - VENDORS

If this policy provides Products Liability Coverage **WHO IS AN INSURED (SECTION II)** is amended to include as an insured any vendor you are required by a written contract or agreement to name as an insured, but only with respect to "bodily injury" or "property damage" arising out of "your product" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1.   The insurance afforded the vendor does not apply to:

**AIU 0586**

Copyright© 1999  American Safety Risk Retention Group, Inc.

a. "Bodily Injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement:

b. any warranty unauthorized by you:

c. any physical or chemical change in the product made intentionally by the vendor:

d. repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container.

e. demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product:

f. products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured vendor from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

## 15. PROPERTY DAMAGE - BORROWED EQUIPMENT

Under **SECTION I, COVERAGE A., ITEM 2, EXCLUSIONS,** the following is added to item **J.**:

a. This exclusion does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

b. This insurance is excess over any other valid and collectible insurance whether primary, excess or contingent, or on any other basis.

## 16. MOBILE EQUIPMENT REDEFINED

Under **SECTION V - DEFINITIONS, ITEM 11,** paragraph f (1)(a)(b)(c) does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

## 17. ADDITIONAL INSURED - CLUB MEMBERS

**SECTION II, WHO IS AN INSURED** is amended to include as an insured employees of the Insured who participates in clubs or organizations that are a function of employment and operate with full knowledge and approval of the Insured, but only with respect to their liability for your activities or activities they perform on your behalf.

## 18. LIMITED DEFENSE COVERAGE FOR INDEMNITIES

Section I, **COVERAGE A., ITEM 2. Exclusions, exclusion c. Contractual Liability (2)** is amended as follows:

(2) Assumed in a contract or agreement that is an "Insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are covered under the terms of **SUPPLEMENTARY PAYMENTS - COVERAGE A AND B,** except that the provision that the insured must also be named is waived, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract": and

(b) Such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## 19. FELLOW EMPLOYEE COVERAGE

In **SECTION V - DEFINITIONS,** Item 6. "Executive officer" is replaced by the following:

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document. The term also includes, at your option, and subject to the terms of this policy, your managers, supervisors or any employees designated by you.

## 20. WAIVER OF SUBROGATION

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** the following is added to condition 8. **Transfer of Rights of Recovery Against Others to Us.**:

**AIU 0587**

If the Insured has waived those rights before a loss, our rights are waived also.

## 22. AGGREGATE LIMITS OF INSURANCE (Per Location)

The General Aggregate Limit under **LIMITS OF INSURANCE (Section II) applies separately to each of "your locations" owned by or rented to you.**

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

## 23. LIBERALIZATION

If we revise the Coverage Form during this policy period to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**AIU 0588**

Copyright© 1999  American Safety Risk Retention Group, Inc.



**AMERICAN SAFETY**

**RISK RETENTION GROUP, INC.**

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX  ☎ (770) 916-0618

---

## POLICY CHANGES ENDORSEMENT # ES 98 09 08 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| POLICY NUMBER | CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| XGI 00-1462-001 | March 1, 2000 | AMERICAN SAFETY RISK RETENTION GROUP, INC. |

| NAMED INSURED |
|---|

Rylock Co., Ltd.
400 S. Fresno St.
Stockton, CA 95203-3007

*Fred J Pinckney*

**Authorized Representative**

CHANGES:

In consideration of the payment of premium, it is hereby agreed that Endorsement ES 98 08 08 99 is deleted and replaced with ES 98 09 08 99 and made a part of this policy.

All other terms, conditions, coverages, and exclusions under the policy are applicable to this endorsement and remain unchanged.

AIU 0589

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASRRG - ES 98 09 08 99

## PRE-EXISTING INJURY OR DAMAGE EXCLUSION - FORM B

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

This insurance does not apply to:

1.  Any "occurrence", incident or "suit" known to any officer of the Named Insured:
    a.  which first occurred prior to the inception date of this policy or the retroactive date of this policy, if any; or
    b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy or the retroactive date of this policy, if any, even if the "occurrence" continues during this policy period.

2.  Any damages arising out of or relating to "bodily injury", "property damage" or "personal and advertising injury" which are known to any officer of the Named Insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy, or the retroactive date of this policy, if any.

We shall have no duty to defend any insured or Additional Insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this Endorsement applies.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0590**

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_09.doc



**AMERICAN SAFETY**

RISK RETENTION GROUP, INC.

1845 The Exchange, Suite 200 ♦ Atlanta, GA  30339
☎ (800) 388-3647  ♦  FAX  ☎  (770) 916-0618

---

## POLICY CHANGES ENDORSEMENT # CG 25 03 11 85

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| POLICY NUMBER | CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| XGI 00-1462-001 | March 1, 2000 | AMERICAN SAFETY RISK RETENTION GROUP, INC. |

NAMED INSURED

**Rylock Company Limited**
**P.O. Box 528**
**Stockton, CA  95201**

*Fred J. Pinckney*
_____
*Authorized Representative*

CHANGES:

In consideration of the payment of premium, it is hereby agreed that Endorsement **CG 25 03 11 85** is added to and made a part of this policy. Also enclosed is the full endorsement ES 98 24 09 99 which was missing the 4th page when sent out.

All other terms, conditions, coverages, and exclusions under the policy are applicable to this endorsement and remain unchanged.

AIU 0591

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE
# (PER PROJECT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

**AIU 0592**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG - ES 98 24 09 99**

**INCIDENTAL SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE ENDORSEMENT**

*THE COVERAGE AFFORDED UNDER THIS ENDORSEMENT IS WRITTEN ON A CLAIMS-MADE BASIS*

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" occurring prior to the expiration or cancellation date of the policy, whichever is earlier, and subsequent to the Retroactive Date, as set forth in this Endorsement, and where such "bodily injury" or "property damage" arises out of the actual "sudden" and "accidental" discharge, dispersal, release or escape of "specified pollutants" caused by your performance of those operations designated in the Classifications Section of the Declarations performed subsequent to the Retroactive Date set forth in this Endorsement and prior to the expiration or cancellation date of the policy, whichever is earlier.

The insurance afforded under this Endorsement applies only if a "claim" for damages because of "bodily injury" or "property damage" is first made against the insured and received by us in writing, in such written form as we may require, during the policy period or Optional Extended Reporting Period, if applicable. All "claims" or "suits" arising out of or related to the same "occurrence", circumstance, person or organization, or arising out of or related to similar or related "occurrences", circumstances, persons or organizations shall be considered as a single "claim" and will be deemed to have been made only at the time when such "claim" is first made against any insured and received by us in writing, in such written form as we may require.

B. The following exclusions are added to SECTION I, COVERAGE A., Par. 2. of the policy.

This insurance does not apply to:

1. "Claims" or "suits" arising out of or related to the discharge, release, escape, dispersal, contamination or exposure to "specified pollutants" in whatever form, which occurs after the completion of "your work".

2. "Claims" or "suits" arising out of or related to any "claim", "occurrence", incident or circumstance which occurred or of which the insured was aware prior to the Retroactive Date as set forth in this Endorsement.

3. "Claims" or "suits" arising out of or related to "hazardous substance remediation activities".

C. All coverage, including all "claim related costs", under this Endorsement shall be subject to a sublimit of $10,000 per "claim" and $10,000 total for all "claim(s)" regardless of the number of "claims", insureds, "suits", persons making "claims" or "suits" or certificates of insurance issued. The sublimit shall be included within and will reduce the overall policy General Aggregate.

D. The following definitions are added to SECTION V of the policy:

"Accidental" means activity or circumstances that are neither expected nor intended nor foreseeable, but rather, which occur by chance, abruptly or unexpectedly.

"Approved hazardous substance remediation activities" means the following specifically described activities:

Those activities, procedures or operations required to clean up, test, sample, analyze, monitor, detoxify, dispose, transport, load, unload, treat, dilute, remove, "encapsulate" or abate "hazardous substances", including but not limited to "asbestos abatement";

end_24.doc    Copyright© 1999 American Safety Risk Retention Group, Inc.

**AIU 0593**

"bioremediation"; "building decontamination"; "duct cleaning"; "emergency response"; "groundwater remediation"; "lead abatement"; "medical waste remediation"; "microbiological decontamination"; "soil incineration"; "soil remediation"; "storage tank cleaning"; "storage tank installation"; "storage tank removal"; "vapor extraction"; "waste incineration".

"Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".

"Asbestos abatement" means all procedures and operations to prevent fiber release from "asbestos" containing or "asbestos" contaminated materials, and excludes "encapsulation" and "enclosure".

"Bioremediation" means the introduction of organisms to soil that is contaminated with "hazardous substances", where such organisms promote the natural degradation of such "hazardous substances".

"Building decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from a building or structure. "Building decontamination" does not include "duct cleaning".

"Caustics" means substances whose aqueous solutions have a pH level greater than 11 and are capable of burning, corroding, dissolving or eating away other materials by chemical reaction.

"Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against the insured by a person, entity or asserted class for damages because of "bodily injury", "property damage", "personal and advertising injury".

"Claim related costs" means all costs and expenses associated with the handling, defense and settlement of any "claim" or "suit", including, but not limited to, amounts for damages, medical expenses, attorneys' fees, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees, SUPPLEMENTARY PAYMENTS and any other "claim" or "suit" related costs or expenses.

"Degreasers" means any "solvents" used for the removal of grease and/or oils from a surface.

"Duct cleaning" means those activities, procedures or operations required to remove dust, impurities or "hazardous substances" from an air duct system.

"Emergency response" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" at a specific site or location, which are performed at the request of a client or governmental entity and are in response to emergency situations caused by the "sudden" and "accidental" discharge, dispersal, release or escape of "hazardous substances".

"Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

"Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

"Fertilizer" means any natural or synthetic material used to promote plant growth.

"Formaldehyde" means a colorless, gaseous compound, used to make synthetic resins such as embalming fluid, preservatives and disinfectants.

"Groundwater remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from water that is located below the surface of the land within the saturated zone of soil or rock. "Groundwater remediation" does not include "natural attenuation".

"Hazardous substances" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to acids, alkalis, animal/bird droppings, "asbestos", chemicals, fumes, "lead", "medical waste", mold/mildew/fungus, "radon", "refractory ceramic fibers", smoke, soot, vapor, waste or other dangerous, hazardous or toxic substances as listed by any state or federal agency

**AIU 0594**

Copyright© 1999  American Safety Risk Retention Group, Inc.

or department. Waste includes any regulated waste, materials to be recycled, reconditioned or reclaimed.

"Heavy metals" means any of a group of metals with an atomic weight greater than sodium (22.9). "Heavy metals" do not include "lead".

"Hydrocarbons" means organic compounds that are principally obtained or derived from petroleum, tar and plant sources, consisting exclusively of the elements carbon and hydrogen.

"Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and any substances containing "lead".

"Lead abatement" means all procedures and operations required to clean up, detoxify, dilute, remove or abate "lead" or "lead" containing materials.

"Medical waste" means any substance that could harbor or transmit pathogenic organisms, including, but not limited to body tissues, organs, body parts, body fluids, blood, excreta, secretions, bandages and hypodermic needles.

"Medical waste remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "medical waste".

"Microbiological decontamination" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate infectious microorganisms, fungi, bacteria and allergens.

"Natural attenuation" means the reduction of the toxicity, mobility, volume or concentration of "hazardous substances" in soil or groundwater through natural means that do not require human intervention.

"Pesticides" means any substance or mixture intended for preventing, destroying, repelling or mitigating any pest or vermin, or intended for use as a plant regulator, defoliant or desiccant.

"Petroleum-based materials" means "hydrocarbons" formulated as either a fuel or a lubricant for machinery or internal combustion.

"Polychlorinated biphenyls (PCBs)" means one of several aromatic compounds which are produced by attaching one or more chlorine atoms to a biphenyl molecule.

"Radon" means a colorless, odorless, tasteless gas produced from the radioactive decay of radium.

"Refractory-ceramic fibers" means continuous or non-continuous filaments made from ceramic material having those chemical and physical properties that allow them to be exposed to environments in excess of 1000°F (538°C).

"Soil incineration" means a combustion process with a heat recovery system utilized to remove or detoxify "hazardous substances" from soil.

"Soil remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from soil.

"Solvents" means any liquid used to dissolve solids or other liquids.

"Specified pollutants" means the following:

acids; alkalis; animal/bird droppings; "caustics"; "degreasers"; "fertilizer"; "formaldehyde"; "heavy metals"; "hydrocarbons"; mold/mildew/fungus; "pesticides"; "petroleum-based materials"; "polychlorinated biphenyls (PCBs)"; "refractory ceramic fibers"; "solvents".

"Storage tank cleaning" means those activities, procedures or operations required to clean up, detoxify, dilute, remove or abate "hazardous substances" from any aboveground or underground storage tank and any associated piping and dispensing equipment.

"Storage tank installation" means the physical installation of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to performance inspection and testing of the "tank system".

"Storage tank removal" means the physical removal of any aboveground or underground storage tank and any associated piping and dispensing equipment subsequent to the performance of "storage tank cleaning".

"Sudden" means circumstances which happen abruptly without previous notice which are temporal and which are neither continuous nor repeated, nor which occur over a period of time.

"Tank system" means an aboveground or underground storage tank, connected piping, ancillary equipment and containment system.

"Vapor extraction" means the reduction of concentrations of "hazardous substances" contained

Copyright© 1999 American Safety Risk Retention Group, Inc.

in contaminated soil through a process of applying a vacuum through extraction wells which extract vapors from such "hazardous substances".

"Waste incineration" means a combustion process with a heat recovery system utilized to reduce the volume and weight of solid waste and to remove or detoxify "hazardous substances" from such solid waste.

| RETROACTIVE DATE | March 1, 2000 |
|---|---|

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**AIU 0596**

Copyright© 1999  American Safety Risk Retention Group, Inc.

end_24.doc

# MEMORANDUM

# RYLOCK COMPANY, LTD

P.O. BOX 5202, WALNUT CREEK, CA 94596
Telephone (925) 945-4938   FAX: (925) 944-4717

| Send to: MATT HARRINGTON | From: Mickey McNickle |
|---|---|
| Company: Lepper & Harrington | Date: December 16, 2004 |
| Subject : American Safety Policies | CC: |
| Fax number: | Phone number: 925-945-4938 |

☐ Urgent   ☐ Reply ASAP   ☐ Please comment   ☐ Please review   ☐ For your information

Total pages, including cover:

**Comments:**  MARCH 1, 2000 TO MARCH 1, 2001

Matt:

Per your request, attached are the American Safety insurance policies for 2001 and 2002.

Due to my envelope size, I have sent these in two separate envelopes.

Please call if you have any questions.

Mickey

AIU 0597