# EXHIBIT I

## Common Policy Declarations

44

| Insurer: | Executive Office: | 32 |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA | 9300 Arrowpoint Blvd. | 08 |
| AN ILLINOIS STOCK COMPANY | Charlotte, NC  28273-8135 | |
| **THIS IS A TRUE AND EXACT COPY OF** | *Internet: http://www.royal-usa.com/* | |

Policy No.  P TS-443208 0000

RENEWAL OF:  P TY-441053

Producer Code: 3193600

**Named Insured & Address**

CALIFORNIA CEDAR PRODUCTS
SEE NAMED INSURED ENDORSEMENT
P.O. BOX 528
STOCKTON          CA 95201

**Producer Name & Address**

SEDGWICK JAMES OF CALIFORNIA
P O BOX 7601
600 MONTGOMERY, 7TH FLOOR
SAN FRANCISCO   CA 94120

**Policy Period:** From  03/01/97 to 03/01/98  at 12:01 A.M. Standard Time at your Mailing Address shown above.

**Business Description:**   WOOD PRODUCTS

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following Coverage Parts for which a premium is indicated.  This premium may be subject to adjustment.

| | Premium | COMM. |
|---|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | NOT COVERED | |
| COMMERCIAL LIABILITY COVERAGE PART(S) | $   337,230.00 | 12.5 |
| COMMERCIAL CRIME COVERAGE PART | NOT COVERED | |
| COMMERCIAL INLAND MARINE COVERAGE PART | NOT COVERED | |
| COMMERCIAL BOILER AND MACHINERY COVERAGE PART | NOT COVERED | |
| COMMERCIAL AUTOMOBILE COVERAGE PART | NOT COVERED | |

TOTAL PREMIUM $     337,230.00

TOTAL PAYABLE DUE AT INCEPTION $     337,230.00

# REINSURED
LIABILITY          X67962-2

Forms Applicable to All Coverage Parts -    IL 00 17 11 85   LI 0004 0990-A   **RYL 03032**

Countersigned_____          By:_____
                    (Date)                                          (Authorized Representative)

These declarations, together with the Common Policy Conditions, Coverage Part Declarations, Coverage Forms and Endorsements, if any, issued to form a part thereof, complete the contract of insurance.

LI 99 99 01 87                COMPANY COPY                      **AIU 0368**

# COMMERCIAL GENERAL LIABILITY COVERAGE PART QUICK REFERENCE

### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverage and Limits of Insurance

**Beginning
On Page**

**SECTION I - COVERAGES**

| | | |
|---|---|---|
| Coverage A - | Insuring Agreement | 1 |
| Bodily Injury and Property Damage Liability | Exclusions | |
| Coverage B - | Insuring Agreement | 4 |
| Personal and Advertising Injury Liability | Exclusions | |
| Coverage C - | Insuring Agreement | 5 |
| Medical Payments | Exclusions | |
| Supplementary Payments | | 5 |

**SECTION II - WHO IS AN INSURED**     6

**SECTION III - LIMITS OF INSURANCE**     7

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**     7

Bankruptcy     Premium Audit
Duties In The Event of Occurrence, Claim or Suit     Representations
Legal Action Against Us     Separation of Insureds
Other Insurance     Transfer of Rights of Recovery Against Others to Us

**SECTION V - DEFINITIONS**     9

**CG 00 02 ONLY**

**SECTION V - EXTENDED REPORTING PERIODS**     10

**SECTION VI - DEFINITIONS**     11

**COMMON POLICY CONDITIONS**

Cancellations     Inspections and Surveys
Changes     Premiums
Examination of Your Books and Records     Transfer of Your Rights and Duties Under this Policy

**ENDORSEMENTS (If Any)**

**AIU 0369**

Copyright, Insurance Services Office, Inc., 1982, 1984

GN 8085 1093

**Royal Insurance**

## Commerical General Liability Coverage Part Declarations

Policy No.  P TS-443208      0000                        Effective Date: 03/01/97

---

**Named Insured and Mailing Address**

> CALIFORNIA CEDAR PRODUCTS
> SEE NAMED INSURED ENDORSEMENT
> P.O. BOX 528
> STOCKTON          CA      95201

## Limits of Insurance

| | |
|---|---|
| GENERAL AGGREAGTE LIMIT | |
| (OTHER THAN PRODUCTS/COMPLETED OPERATIONS) | $2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMITS | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $2,000,000 |
| EACH OCCURRENCE LIMIT | $2,000,000 |
| FIRE DAMAGE LIMIT (ANY ONE FIRE) | $1,000,000 |
| MEDICAL EXPENSE LIMIT (ANY ONE PERSON) | 10,000 |

Form of Business
CORPORATION

## Location of All Premises You Own, Rent or Occupy

For description of the insured premises, please refer to the attached schedules

## Classifications

All classifications applicable to this coverage form may be found in the attached schedules

## Coverage Forms and Endorsements Attached to this policy:

| | | | |
|---|---|---|---|
| CG 21 47 10 93 | CG 24 04 10 93 | CG 25 03 11 85 | CG 25 04 11 85 |
| GC 03 30 06 96 | CG 00 01 10 93 | GC 00 01 01 87 | IL 02 70 02 94 |
| GC 00 38 12 87 | CG 03 00 10 93 | CG 21 33 11 85 | IL 00 21 11 94 |
| GC 00 09 04 88 | IL 02 62 12 95 | LI 0004 0990-B | LI 0004 0990-C |
| LI 0004 0990-D | LI 0004 0990-E | LI 0004 0990-F | LI 0004 0990-G |
| LI 0004 0990-H | | | |

---

These declarations, when combined with the Common Policy Declarations, Common Policy Conditions,
Coverage Forms and Endorsements, if any, forming a part thereof, complete the contract of insurance.

---

GC 99 99 01 87                    COMPANY  COPY
                      B31B   P TS-443208   0000   T001   02/28/9.

AIU 0370

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85    Copyright, Insurance Services Office, Inc., 1982, 1983

**AIU 0371**

*This Endorsement Changes the Policy. Please Read it Carefully.*

| | ENDORSEMENT NO. |
|---|---|
| | A |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | COUNTERSIGNED BY: |
|---|---|
| | |
| | AUTHORIZED REPRESENTATIVE |

| COMPANY | | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
|---|---|---|---|
| PRODUCER CODE | PREMIUM<br><br>Add'l. ____ Ret. ____ $ _____ | ENDORSEMENT (MO.,DAY, YR) EFFECTIVE DATE | POLICY SYMBOL & NO.<br><br>P TS-443208 0000 |

Named Insured (and address, zip code when necessary for mailing)          Producer (and address, zip code for mailing)

## NAMED INSURED

CALIFORNIA CEDAR PRODUCTS COMPANY

CALMILLS, INC.

CALCEDAR EXPORT, INC.

C.P.C. MARKETING

DURAFLAME, INC.

P&M HOLDINGS, INC.

P&M CEDAR PRODUCTS, INC., A WHOLLY OWNED SUBSIDIARY OF P&M HOLDINGS, INC.

LITTLE SAINT SIMONS ISLAND, A DIVISION OF P&M HOLDINGS, INC.

RYLOCK COMPANY, LTD.

PHILIP C. BEROLZHEIMER, AND MICHAEL G. BEROLZHEIMER, AS INDIVIDUALS

FIRSTMARK

SPRING HILL ASSOCIATES, A PARTNERSHIP COMPOSED OF P&M CEDAR PRODUCTS, INC. (50%) AND MARTIN COOPER (50%) AND/OR ANY OTHER SUBSIDIARY OWNED OR FINANCIALLY CONTROLLED COMPANY AS IS NOW OR MAY HEREAFTER BE CONSTITUTED.

ESTATE OF CHARLES P. BEROLZHEIMER

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

**AIU 0373**

B31B    P TS-443208 0000    T001        02/28/97        P2-00001668

THIS ENDORSEME... CHANGES THE POLICY. PLEASL ..EAD IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

As required by contract

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93                    Copyright, Insurance Services Office, Inc., 1992                    **AIU 0374**

# AMENDMENT-AGGREGATE LIMITS OF INSURANCE
# (PER LOCATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

CG 25 04 11 85          Copyright, Insurance Services Office, Inc., 1984

**AIU 0375**

Royal Insurance

*This Endorsement Changes the Policy. Please Read it Carefully.*

# CALIFORNIA
# GENERAL LIABILITY ENHANCEMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**1. NAMED INSURED**

Under **SECTION II - WHO IS AN INSURED, ITEM 4.** is replaced in its entirety with the following:

4. Any organization over which you maintain ownership or a majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   b. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2. KNOWLEDGE OF OCCURRENCE**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 2 - DUTIES IN THE EVENT OF OCCURRENCE, CLAIM, OR SUIT,** the following is added:

   e. You must give us or our authorized representative prompt notice of an "occurrence", claim or loss only when the "occurrence", claim or loss is known to:

      1. You, if you are an individual;

      2. A partner, if you are a partnership; or

      3. An executive officer or the employee designated by you to give such notice, if you are a corporation.

**3. REVISED NOTICE OF OCCURRENCE**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 2 - DUTIES IN THE EVENT OF OCCURRENCE, CLAIM, OR SUIT,** the following is added:

   f. Your rights under this policy will not be prejudiced if you fail to give us notice of an "occurrence" or claim, and that failure is solely due to your reasonable belief that the "bodily injury" or "property damage" is not covered under this policy.

**4. UNINTENTIONAL ERRORS OR OMISSIONS**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, ITEM 6 - REPRESENTATIONS,** the following is added:

   d. We will not disclaim coverage under this Coverage Form if you unintentionally fail to disclose all hazards existing as of the inception date of the policy.

**5. PREMISES ALIENATED**

Under **SECTION I - COVERAGE A., ITEM 2 EXCLUSIONS,** Paragraph j.(2) is replaced in its entirety with the following:

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises, and occurred from hazards that were known by you, or should have reasonably been known by you, at the time the property was transferred or abandoned.

**6. CANCELLATION CONDITION**

Under **COMMON POLICY CONDITIONS, SECTION A, FORM IL 0017 - CANCELLATION,** paragraph 2. is replaced in its entirety by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 60 days before the effective date of cancellation if we cancel for any other reason.

Under **COMMON POLICY CONDITIONS, SECTION A. FORM IL 0017 - CANCELLATION,** the following is added:

7. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 60 days prior to the expiration date of the policy.

**AIU 0376**

GC 0330 0696

Page 1 of 5

A. Under SECTION I, COVERAGE C, MEDICAL PAYMENTS, 1. Insuring Agreement, Paragraph a. is replaced by the following:

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent;

(3) Because of your operations; or

(4) Included within the "Products-Completed Operations hazard"

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within three years of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Item 2., Exclusions, exclusion f. is replaced by the following:

f. Caused by or resulting from substantive or chemical alteration of the insured's products without written authorization by the insured executed prior to the time of loss.

B. Under SECTION III, LIMITS OF INSURANCE paragraphs 3 and 7 are replaced by the following:

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" and Coverage C for "bodily injury" included in the "products-completed operations hazard".

7. Subject to 5. above, the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person is the greater of:

1. $10,000; or

2. The amount shown in the Declarations for Medical Expense Limit.

COVERAGE C. MEDICAL PAYMENTS is not provided by this policy.

8. INSURED CONTRACT

In SECTION V - DEFINITIONS, definition 8. "Insured contract" is replaced by the following:

8. "Insured Contract" means:

a. A lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. An easement or license agreement;

d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work performed for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

An "Insured Contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1) Preparing, approving, failing to prepare or approve maps, shop drawings, opinions, reports, surveys, change orders, design, or drawings and specifications; or

AIU 0377

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

d. That indemnifies any person or organization for damage by fire, lightning or explosion to premises rented or loaned to you.

## 9. PROPERTY DAMAGE LIABILITY - ELEVATOR AND SIDETRACK AGREEMENTS

Under **SECTION I, COVERAGE A., ITEM 2, EXCLUSIONS**, the following applies:

1. Paragraphs (3), (4) and (6) of **EXCLUSION j.** do not apply to "property damage" to property while on or being moved onto or off an elevator.

2. Exclusion **k.** does not apply to:

   a. "Your product" while on, being moved onto or off an elevator; or

   b. Liability assumed under a sidetrack agreement.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

## 10. NON-OWNED WATERCRAFT

Under **SECTION I COVERAGE A., ITEM 2, EXCLUSIONS**, Item g., Paragraph (2)(a) is amended as follows:

**a.** Less that 51 feet long; and

This provision 10 applies to any person, who with your consent, either uses or is responsible for the use of a watercraft.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess or contingent.

## 11. SUPPLEMENTARY PAYMENTS

Under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B:**

1. Paragraph 2 is revised to increase the limit for the cost of bail bonds from **$250** to **$1,000**; and

2. Paragraph 4 is revised to increase the limit for loss of earnings from **$100 a day** to **$300 a day**.

3. The following paragraph is added:

   8. All expenses we incur and all necessary expenses incurred at our request by an indemnitee of the insured in a "suit" if:

      a. We also defend the insured in the "suit"; and

      b. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract".

## 12. ADDITIONAL INSUREDS - BY CONTRACT, AGREEMENT OR PERMIT

The following is added to **SECTION II - WHO IS AN INSURED:**

5. a. Any person or organization you are required by a written contract, agreement or permit to name as an insured but only with respect to liability arising out of:

   1. "Your work" performed for that insured at the location designated in the contract, agreement or permit; or

   2. Premises owned or used by you.

   b. This insurance does not apply unless the contract, agreement or permit is executed prior to the "bodily injury" or "property damage".

   c. This insurance does not apply to the rendering of or failure to render any professional services.

   d. This insurance is primary if that is required by the contract, agreement or permit.

## 13. FIRE, LIGHTNING OR EXPLOSION DAMAGE

The last paragraph of **SECTION I, COVERAGE A, 2. EXCLUSIONS** is replaced by the following:

a. Exclusions c through n do not apply to damage by fire, lightning, or explosion to premises rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

---

GC 0330 0696

**AIU 0378**

B31B    P TS-443208 0000    T001    02/28/97    P2-00001673

Paragraph 6 of **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

6. Subject to **5.** above, the most we will pay for damages because of property damage to premises rented by you or temporarily occupied by you with permission of the owner resulting from fire, lightning or explosion, or any combination of the three, is the greater of:

  a. $300,000; or

  b. The amount shown next to Fire Damage Limit in the Declarations.

  This provision 13 does not apply if Fire Legal Liability coverage is not provided by this policy.

14. **INCIDENTAL MEDICAL MALPRACTICE LIABILITY**

The definition of "bodily injury" is amended to include injury arising out of the rendering of or failure to render, during the policy period, the following services:

(A) medical, surgical, paramedical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(B) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This insurance does not apply to any insured engaged in the business or occupation of providing any of the services described under (A) and (B) above except an employee of yours who provides medical, paramedical, surgical, dental, x-ray or nursing services.

15. **ADDITIONAL INSURED - VENDORS**

If this policy provides Products Liability Coverage, **WHO IS AN INSURED (SECTION II)** is amended to include as an insured any vendor you are required by a written contract or agreement to name as an insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

  a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for

damages that the vendor would have in the absence of the contract or agreement;

  b. any warranty unauthorized by you;

  c. any physical or chemical change in the product made intentionally by the vendor;

  d. repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

  e. demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

  f. products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured vendor from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

16. **PROPERTY DAMAGE - BORROWED EQUIPMENT**

Under **SECTION I, COVERAGE A., ITEM 2, EXCLUSIONS**, the following is added to item j.:

  a. This exclusion does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

  b. This insurance is excess over any other valid and collectible insurance whether primary, excess or contingent, or on any other basis.

17. **MOBILE EQUIPMENT REDEFINED**

Under **SECTION V - DEFINITIONS, ITEM 11**, paragraph f(1)(a)(b)(c) does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

18. **ADDITIONAL INSURED - CLUB MEMBERS**

**SECTION II, WHO IS AN INSURED** is amended to include as an insured employees of the insured who participate in clubs or organizations that are a function of employment and operate with full knowledge and approval of the insured, but only with respect to their liability for your activities or activities they perform on your behalf.

19. **FELLOW EMPLOYEE COVERAGE**

In **SECTION V - DEFINITIONS**, item 6. "Executive officer" is replaced by the following:

8. Executive officer  eans a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document. The term also includes, at your option, and subject to the terms of this policy, your managers, supervisors or any employees designated by you.

## 20. WAIVER OF SUBROGATION

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to condition **8. Transfer of Rights of Recovery Against Others to Us**:

If the insured has waived those rights before a loss, our rights are waived also.

## 21. AGGRE...TE LIMITS OF INSURANCE (Per Location)

The General Aggregate Limit under LIMITS OF INSURANCE (Section II) applies separately to each of "your locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

## 22. LIBERALIZATION

If we revise the Coverage Form during this policy period to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

B31B     P TS-443208 0000     T001     02/28/97     P2-00001674

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**AIU 0381**

Copyright, Insurance Services Office, Inc., 1992

B31B    P TS-443208 0000    T001        02/28/97        P2-00001647

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93

**AIU 0382**

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

## h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

## i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

## k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

## l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**AIU 0383**

B31B    P TS-443208 0000    T001    02/28/97    P2-00001648

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93   □

AIU 0384

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**AIU 0385**

R31B    P TS-443208 0000    T001        02/28/97        P2-00001649

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93    □

AIU 0386

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an ~~offense committed before you acquired or~~ formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**AIU 0387**

c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (2) That is Fire insurance for premises rented to you; or

    (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93    ☐

**AIU 0388**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

**AIU 0389**

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

AIU 0390

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

**14.a.** "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

**b.** "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

**AIU 0391**

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93    ☐

**AIU 0392**

**Royal Insurance**

*This Endorsement Changes the Policy. Please Read it Carefully.*

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In consideration of the premium charged, it is agreed that the insurance provided by this policy shall not apply to any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos, or any product containing asbestos.

It is further agreed that we shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded herein.

GC 0001 0187

**AIU 0393**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART - EXCEPT COVERAGE FORMS A AND B
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The following provisions are added to the CAN-CELLATION Common Policy Condition:

**7. RESIDENTIAL PROPERTY**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART - FARM PROPERTY COVERAGE FORM

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. and c. below.

b. We may not cancel such coverage solely because the first Named Insured has accepted our offer of earthquake coverage.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (c.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) BUSINESSOWNERS POLICY - BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM;

(2) COMMERCIAL PROPERTY COVERAGE PART - CAUSES OF LOSS - SPECIAL FORM; or

(3) FARM COVERAGE PART - FARM PROPERTY COVERAGE FORM; Covered Causes of Loss - SPECIAL.

**8. ALL POLICIES IN EFFECT FOR MORE THAN 60 DAYS**

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

 Copyright, Insurance Services Office, Inc., 1988, 1993
Copyright, ISO Commercial Risk Services, Inc., 1988, 1993

**AIU 0394**

B31B   P TS-443208 0000   T001      02/28/97       P2-00001632

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

(b) Continuation of the policy coverage would:

(i) Place us in violation of California law or the laws of the state where we are domiciled; or

(ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for a reason listed in paragraph 8.a.(1) or (2).

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in paragraph 8.a.

B. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of paragraphs B.2. and B.3. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **RESIDENTIAL PROPERTY**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART - FARM PROPERTY COVERAGE FORM

a. We may elect not to renew such coverage for any reason, except as provided in b. and c. below:

b. We will not refuse to renew such coverage solely because the first Named Insured has accepted our offer of earthquake coverage.

c. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (c.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) BUSINESSOWNERS POLICY - BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM;

Copyright, Insurance Services Office, Inc., 1988, 1993
Copyright, ISO Commercial Risk Services, Inc., 1988, 1993

IL 02 70 02 94    □

AIU 0395

# CONFORMITY WITH STATUTE

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | COUNTERSIGNED BY: |
|---|---|
| | |
| | AUTHORIZED REPRESENTATIVE |
| COMPANY | |

| PRODUCER CODE | ENDORSEMENT (MO., DAY, YR) EFFECTIVE DATE | POLICY SYMBOL & NO. P TS–443208 0000 |
|---|---|---|
| Named Insured (and address, zip code when necessary for mailing) | Producer (and address, zip code, for mailing) | |

Any terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

GC 0038 1287

AIU 0396

POLICY NUMBER:  P TS-443208 0000

COMMERCIAL GENERAL LIABILITY
CG 03 00 10 93

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM  or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ 1,000. |
| OR | | |
| Bodily Injury Liability and/or | | |
| Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

APPLIES TO DURAFLAME, INC. ONLY

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages

2. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   a. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

(2) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

(3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (a) "Bodily injury";
   (b) "Property damage"; or
   (c) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

### AIU 0397

Copyright, Insurance Services Office, Inc., 1992

B31B    P TS-443208 0000    T001        02/28/97        P2-00001419

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

b. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

(1) Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

(2) Under Property Damage Liability Coverage, to all damages because of "property damage"; or

(3) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(a) "Bodily Injury";

(b) "Property damage"; or

(c) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:

(a) Our right and duty to defend any "suits" seeking those damages; and

(b) Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1992

CG 03 00 10 93 □

**AIU 0398**

POLICY NUMBER:  P TS-443208 0000                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Product(s):**

    PENCIL SLATS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.

**AIU 0399**

CG 21 33 11 85                    Copyright, Insurance Services Office, Inc., 1984                    □

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
    TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage:"

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

**AIU 0400**

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

AIU 0401

**Royal Insurance**

*This Endorsement Changes the Policy. Please Read it Carefully.*

# EMPLOYEE BENEFITS ERRORS AND OMISSIONS INSURANCE

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations.*

| | |
|---|---|
| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | COUNTERSIGNED BY: |
| | |
| | AUTHORIZED REPRESENTATIVE |
| COMPANY | |

| PRODUCER CODE | PREMIUM<br><br>Add'l. ___ Ret. ___ $ _____ | ENDORSEMENT (MO., DAY, YR)<br>EFFECTIVE<br>DATE | POLICY SYMBOL & NO.<br><br>P TS-443208 0000 |
|---|---|---|---|
| Named Insured (and address, zip code when necessary for mailing) | | Producer (and address, zip code, for mailing) | |

## DECLARATION

ITEM 1.    Named Insured
and Address:

CALIFORNIA CEDAR PRODUCTS
SEE NAMED INSURED ENDORSEMENT
P.O. BOX 528
STOCKTON          CA 95201

ITEM 2.    Limit of Liability: $ ___2,000,000___ each claim; $ ___2,000,000___ aggregate

ITEM 3.    Premium Computation:

| Estimated Number of Employees | Rate (Per Employee) | Estimated Premium |
|---|---|---|
| | First 5000 $ INCLUDED | $ INCLUDED |
| | Next 5000 $ | $ |
| | Over 10000 $ | $ |
| Minimum Premium: $ INCLUDED | | Total $ INCLUDED |

## INSURING AGREEMENTS

This endorsement modifies insurance provided in the policy as follows:

I.  COVERAGE. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of claims made against you by an employee, former employee or the beneficiaries or legal representatives thereof and caused by any negligent act, error or omission of yours, or any other person for whose act the "insured" is legally liable in the "administration" of your "Employee Benefit Programs."

II. Our obligation to pay damages on your behalf applies only to the amount in excess of a $1,000 deductible as applicable to each claim.

It is agreed you must see to it that we are notified promptly of an "occurrence" which may result in a claim. You must also provide prompt written notice of any claim or "suit" brought against any "insured" to us or any of our authorized agents. We may investigate and settle any claim or "suit" at our discretion; and you are to cooperate with us in the investigation, settlement or defense of the claim or "suit" to the extent of the stated deductible amount or promptly reimburse us for such part of the deductible amount as has been paid by us.

III. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. We shall:

(a) have the right and duty to defend any "suit" against you alleging such negligent act, error or omission to which this insurance applies and shall make investigation and negotiation of any claim or "suit" as we deemed expedient. However, we shall not make settlement or compromise any claim or "suit" without your written consent.

(b) pay the cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability of this endorsement. We do not have to furnish these bonds.

(c) pay all costs taxed against the "insured" in the "suit," all expenses we incur and all interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

(d) reimburse all reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

These payments will not reduce the limits of liability of this endorsement.

IV. EXTENDED REPORTING PERIODS

Upon termination or expiration, by you or us, of this endorsement for any reason the Named Insured shall have the right to:

(a) A Basic Extended Reporting Period automatically provided without additional charge. This period starts with the end of this endorsement period and lasts for 60 days.

(b) A Supplemental Extended Reporting Period of unlimited duration is available, but only for an extra charge. This supplemental period starts 60 days after the end of this endorsement period provided:

1. You give us a written request for the coverage within 60 days after the termination of this endorsement;
2. You pay promptly when due an additional premium not to exceed 200% of the annual premium for this coverage.

(c) Extended Reporting Periods do not extend the endorsement period or change the scope of coverage provided. They apply only for claims for damages covered by this endorsement that occurred during the original term of this endorsement.

V. POLICY PERIOD AND TERRITORY. This endorsement applies only to claims resulting from negligent acts, errors or omissions of yours, or any other person for whose act the "insured" is legally liable in the "administration" of "Employee Benefit Programs" occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada, provided such claim is first made against any "insured" during the policy period, and, as of the effective date of this policy you had no knowledge of, nor could have reasonably foreseen, any circumstances which might result in a claim of "suit."

VI. DEFINITION

A. "Insured" - the word "insured," wherever used in this endorsement, includes not only you, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the "administration" of your "Employee Benefit Programs."

B. "Employee Benefit Programs" - shall mean Group Life Insurance, Group Accident or Health Insurance, Profit Sharing Plans, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

AIU 0403

C. "Administration" - wherever used in this endorsement shall mean:

1. giving counsel to employees with respect to the "Employee Benefit Programs;"
2. interpreting the "Employee Benefit Programs;"
3. handling of records in connection with the "Employee Benefit Programs;"
4. effecting enrollment or cancellation of employees under the "Employee Benefit Programs;"

Provided all such acts are authorized by you.

## EXCLUSIONS

This endorsement does not apply to:

(a) any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation;

(b) bodily injury, sickness, disease or death or any person, or physical injury to or destruction of any tangible property including all resulting loss of use of that property;

(c) any claim for failure of performance of contract by an insurer, or any other party, including the "insured," obligated to afford the benefits;

(d) any obligation of the "insured" under a Workers' Compensation, Social Security, Disability Benefits or Unemployment Compensation law or any similar law;

(e) any claim based upon:

(1) failure of stock, bonds or other securities to perform as represented by an "insured" including but not limited to their failure to produce financial gain, profit or growth.

(2) advice given by an "insured" to an employee to participate or not to participate in stock subscription plans.

(f) any liability of an insured as a fiduciary under the Employee Retirement Income Security Act of 1974 (P.L. 93-406), as respects any employee benefit plan.

## CONDITIONS

1. Policy Provisions. No provision of the policy applies to the insurance under this endorsement.

2. Limits of Liability. The limits of liability shown in the Declarations as applicable to "each claim" is the most we will pay for all damages on account of any covered claim. The "aggregate" limit stated in the Declarations, subject to the above provision respecting each claim, is the most we will pay for the sum of all covered claims occurring during each policy year. The inclusion of more than one "insured" shall not operate to increase our limits of liability.

3. Duties In the Event of Claim or Suit. You must see to it that we are notified promptly when you receive information as to your alleged negligent act, error or omission. Such notice shall contain full information of any claim arising therefrom. If claim is made or "suit" is brought the insured must immediately send up copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."

4. Assistance and Cooperation of the Insured. You and any other insured must cooperate with us in the investigation, settlement or defense of the claim or "suit" and assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

5. Legal Action Against US. No person or organization has a right under this endorsement to join us as a party or otherwise bring us into a "suit" asking for damages from an insured or to sue us on this endorsement unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured obtained after an actual trail; but we will not be liable for damages that are not payable under terms of this endorsement or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

6. Other Insurance. If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of liability to the total applicable limits of liability of all insurers for such loss.

7. Subrogation. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

8. Changes. This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

9. Non-Assignable. The interest of the insured under this policy shall not be assignable to any other interest.

10. Cancellation. This policy may be cancelled as follows:

    1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

        a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
        b. 30 days before the effective date of cancellation if we cancel for any other reason.

    3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

    4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    6. If notice is mailed, proof of mailing will be sufficient proof of notice.

11. Premium. The premium stated in the Declarations is only an estimated premium. At our request the insured, upon termination of each policy period, will furnish us a statement of the total number of employees at the end of the policy period. The earned premium shall be computed on the average of the number of employees at the beginning and the end of such period in accordance with the rates set forth in item 3 of the Declarations. If the computed earned premium is greater than the paid advance premium you shall pay the excess to us; if less, we will return the excess to the First Named Insured subject to the minimum premium stated in item 3 of the Declarations.

AIU 0405

IL 02 62 12 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph A.1. of the CANCELLATION Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   a. If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   b. If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

   (1) 10 days from the date of mailing or delivering our notice, or

   (2) The effective date of cancellation stated in the first Named Insured's notice to us.

B. Paragraph A.5. of the CANCELLATION Common Policy Condition is replaced by the following:

5. Premium Refund

   a. If this policy is cancelled, we will send the first Named Insured any premium refund due.

   b. If we cancel, the refund will be pro rata, except as provided in c. below.

   c. If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

   d. If the first Named Insured cancels, the refund may be less than pro rata.

   e. The cancellation will be effective even if we have not made or offered a refund.

**AIU 0406**

C. The following is added to the CANCELLATION Common Policy condition and supersedes any other provisions to the contrary:

If we decide to:

1. Cancel or nonrenew this policy; or

2. Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

3. Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph D. below, we will mail or deliver notice at least:

1. 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2. 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3. 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

D. The following provisions apply to insurance covering residential real property only provided under the:

COMMERCIAL PROPERTY COVERAGE PART;
FARM COVERAGE PART;

if the named insured is a natural person.

With respect to such insurance, the following is added to the CANCELLATION Common Policy Condition and supersedes any provisions to the contrary:

1. When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first named insured at least 10 days before the date cancellation takes effect.

2. When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium, whether payable to us or to our agent;

b. Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

c. Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

d. Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first named insured at least:

• 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

• 45 days before the effective date of cancellation if we cancel for any of the reasons listed in b., c. or d. above.

**AIU 0407**

Copyright, Insurance Services Office, Inc., 1995
Copyright, ISO Commercial Risk Services, Inc., 1995

IL 02 62 12 95

# ♛ Royal Insurance

### *This Endorsement Changes the Policy. Please Read it Carefully*

| | ENDORSEMENT NO. |
|---|---|
| | B |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | | |
|---|---|---|
| COMPANY | **AUTHORIZED REPRESENTATIVE** | |
| | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
| Add'l ☐  Ret. ☐  $ | DATE | **PTS 443208** |
| Named Insured (and address, zip code when necessary for mailing) | Producer (and address, zip code, for mailing) | |

This endorsement changes the policy.  Please read it carefully.

### Logging and Lumbering Operations endorsement

This endorsement modifies insurance provided under the following:

### Commercial General Liability Coverage Part

With respect to logging and lumbering operations as defined below, Section 1, coverage A Property Damage Liability, is amended to include the following:

1.  Fire Suppression Expense - meaning fire suppression expenses incurred by others for which the named insured is legally obligated, solely by reason of such expenses having been incurred as a direct consequence of fire resulting from and immediately attributable to an occurrence arising out of logging or lumbering operations of the named insured.

2.  Property Damage to Timberland or Timber not owned by any named insured - meaning property damage to timberland standing, felled or bucked timber at premises rented or controlled by the named insured, if such timberland or timber is not owned by any insured and except while such timber is being transported.

3.  Property Damage to automobiles and railroad cars not owned by the named insured - meaning property damage to automobiles and railroad cars not owned by the named insured which occurs while such vehicles are being loaded or unloaded by or on behalf of the named insured and arises out of such loading and unloading.

**AIU 0408**

**Royal Insurance**

The insurance provided for fire suppression expense and for damage to timberland or timber not owned y any named insured shall not apply to damages because of fire or fire suppression if the fire arose out of the following operations conducted by or at the direction of the insured:

    (A)    The burning of slash at times or under conditions prohibited or not approved by proper state or federal authorities, or

    (B)    The felling or bucking of timber, the operation of logging equipment (including railroad equipment) or the loading or unloading of logs at a time during which suspension of such operations had been directed by the proper state or federal authorities.

The insurance afforded by this endorsement is subject to a $250.00 property damage deductible per occurrence.

Definition: Logging and lumbering operations means all operations associated with the felling of timber and production of lumber, including road building operations, the operation of saw or planning mills, operations incidental to any of these, and ownership, maintenance or use of vehicles in connection with such operations, if such operations are conducted by or for the named insured.

AIU 0409

# Royal Insurance

*This Endorsement Changes the Policy. Please Read it Carefully*

| | ENDORSEMENT NO. |
|---|---|
| | C |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | |
|---|---|
| | **AUTHORIZED REPRESENTATIVE** |
| COMPANY | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |

| | Add'l ☐ Ret. ☐ $ | DATE | PTS 443208 |

Named Insured (and address, zip code when necessary for mailing)          Producer (and address, zip code, for mailing)

---

## Water Damage Legal Liability

RE: Endorsement GC0330 (0696), #13 **FIRE, LIGHTING OR EXPLOSION DAMAGE:**

1. Replace the words "Fire, Lighting, or Explosion" with "Fire, Lighting, Explosion, or Water".

2. Any reference to the limits of insurance as "Any combination of the three" is amended to "Any combination of the four".

AIU 0410

**Royal Insurance**

*This Endorsement Changes the Policy. Please Read it Carefully*

| | ENDORSEMENT NO. |
|---|---|
| | D |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | | | | | |
|---|---|---|---|---|---|
| | | | | **AUTHORIZED REPRESENTATIVE** | |
| COMPANY | | | | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
| | | Add'l ☐ | Ret. ☐  $ | DATE | **PTS 443208** |

Named Insured (and address, zip code when necessary for mailing) · · · · · · · · · · Producer (and address, zip code, for mailing)

It is understood and agreed that exclusion (G) of the Commercial General Liability Coverage Part (Form CG0001) does not apply to watercraft owned by the named insured as follows:

    1979   Nettler 14' Aluminum Fishing Boat with
                 1979 Manner 15 HP Outboard - 2M79L

    1987   Sylvan 14' Aluminum Fishing Boat with
                 1987 Manner 15 HP Outboard - 8L687, 9L687, 2L687

Metal 14' Canoe

3 Sea Snapper Hulls

3 15 YP Yamaha Outboards

"Klamath" Ferry Boat, but only as respects those coverages not afforded under either the P & I policy or the Tulip policy currently in force.

It is further warranted that the insured shall maintain the P & I and Tulup policies as described on file with the company.

**AIU 0411**

# ♜ Royal Insurance

*This Endorsement Changes the Policy. Please Read it Carefully*

|  | ENDORSEMENT NO. |
|---|---|
|  | E |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | | | |
|---|---|---|---|
| | | **AUTHORIZED REPRESENTATIVE** | |
| COMPANY | | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
| | Add'l ☐  Ret. ☐  $ | DATE | PTS 443208 |

Named Insured (and address, zip code when necessary for mailing)          Producer (and address, zip code, for mailing)

## Liquor Liability

It is agreed that exclusion (C) of section I of the Commercial General Liability Insurance Coverage Part (Form CG0001) does not apply to the insureds operations on Little St. Simon's Island.

**AIU 0412**

♛ **Royal Insurance**

*This Endorsement Changes the Policy. Please Read it Carefully*

| | ENDORSEMENT NO. |
|---|---|
| | F |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | |
|---|---|
| | **AUTHORIZED REPRESENTATIVE** |

| COMPANY | | | | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
|---|---|---|---|---|---|
| | Add'l ☐ | Ret. ☐ | $ | DATE | **PTS 443208** |

| Named Insured (and address, zip code when necessary for mailing) | Producer (and address, zip code, for mailing) |
|---|---|
| | |

The endorsement changes the policy.   Please read it carefully.

Known Injury or Damage Exclusion

This endorsement modifies insurance provided under the following:

Commercial General Liability

The following is added to paragraph 2., exclusions of coverage A - Bodily Injury and Property Damage Liability (Section 1- Coverages) and paragraph 2., exclusions of coverage B - Personal and Advertising Injury Liability (Section 1 - Coverages):

This insurance does not apply to "Bodily Injury" or "Property Damage" arising form an "Occurrence" or "Personal Injury" or "Advertising Injury" arising from an offense which was known to any corporate officer of the insured prior to the effective date of this policy regardless of whether there is repeated or continued exposure during the policy period or whether the injury or damage continues during the policy period.

For the purposes of this exclusion:                                                         **AIU 0413**

(A)      Knowledge of a prior "Occurrence" or offense is defined as: any occurrence for which the insured has been served legal notification.

   )      Knowledge of "Bodily Injury" or Property Damage" arising from an "Occurrence" or "Personal Injury" or "Advertising Injury" arising from an offense constitutes knowledge of all injury or damage caused by the same "Occurrence" of offense.

# ♛ Royal Insurance

*This Endorsement Changes the Policy. Please Read it Carefully*

|  | ENDORSEMENT NO. |
|---|---|
|  | G |

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | |
|---|---|
|  | **AUTHORIZED REPRESENTATIVE** |
| COMPANY | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
| Add'l ☐  Ret. ☐  $ | DATE | **PTS 443208** |

| Named Insured (and address, zip code when necessary for mailing) | Producer (and address, zip code, for mailing) |
|---|---|
|  |  |

### Notice of Loss or Claim

This insurance shall not be prejudiced by your failure to give prompt notice of loss or claim unless knowledge of the event giving rise to the loss or claim is coveyed to your risk manager or insurance manager, nor shall you be penalized for reporting such loss or claim to what later proves to be the wrong insurance company.

This clause supersedes paragraph #2 of form GC0330 (0696) "General Liability Coverage Enhancement Endorsement".

**AIU 0414**

Royal Insurance

*This Endorsement Changes the Policy. Please read it Carefully.*

# ABSOLUTE ASBESTOS EXCLUSION
# (GEORGIA, LOUISIANA, OKLAHOMA)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This insurance does not apply to any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos, or any product containing asbestos.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit resulting from or arising out of asbestos, exposure to asbestos, or any product containing asbestos.

Accepted: _____
Signature of Insured

(2) COMMERCIAL PROPERTY COVERAGE PART - CAUSES OF LOSS - SPECIAL FORM; or

(3) FARM COVERAGE PART - FARM PROPERTY COVERAGE FORM; Covered Causes of Loss - SPECIAL.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

   b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph **B.1.**

   c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in paragraph **B.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

IL 02 70 02 94

Copyright, Insurance Services Office, Inc., 1988, 1993
Copyright, ISO Commercial Risk Services, Inc., 1988, 1993

Page 3 of 3    ☐

**AIU 0416**

B31B    P TS-443298 0000    T001    02/28/97    P2-00001633

*This Endorsement Changes the Policy. Please Read it Carefully.*

ENDORSEMENT NO.
**H**

*Type policy number only, in this section above the heavy line, IF issued with policy and attachment stated in policy declarations*

| | |
|---|---|
| If this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences. Otherwise, the effective date of this endorsement is as shown below at the same time or hour of the day as the policy became effective. | COUNTERSIGNED BY: |
| | |
| | AUTHORIZED REPRESENTATIVE |

| COMPANY | | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE |
|---|---|---|---|
| PRODUCER CODE | PREMIUM Add'l. ___ Ret. ___ $ _____ | ENDORSEMENT (MO.,DAY, YR) EFFECTIVE DATE | POLICY SYMBOL & NO. P TS-443208. 0000 |

Named Insured (and address, zip code when necessary for mailing)    Producer (and address, zip code for mailing)

THE FOLLOWING CLASS CODES, RATES, EXPOSURES, AND PREMIUMS ARE TO APPLY.

| ENTITY | CODE | DESCRIPTION | SALES | RATE | PREMIUM |
|---|---|---|---|---|---|
| DURFLAME | 59985 | WOOD PRODUCTS | $58,000,000. | $4.01 | $232,580 |
| RYLOCK | 52134 | DOOR OR WINDOW MFG. | $ 9,000,000. | $3.862 | $ 34,758 |
| P&M | 58873 | SAW MILLS | $34,000,000. | $1.88 | $ 63,920 |
| LSSI | 45190 | HOTELS | $   821,000. | $6.97 | $  5,722 |

| | |
|---|---|
| TOTAL | $336,980 |
| EMPLOYEE BENEFITS | 250 |
| TOTAL PREMIUM | $337,230 |

**AIU 0417**

AIIB-   P TS-443208 0000    T001    02/28/97    P2-00001417-

**Defendant Was Served [**17] In Accordance With The Hague Service Convention**

Although Brown waived his defense of insufficient service of process, his arguments also fail on the merits.

Brown asserts that he was not ███████████████████ accordance with The Hague Convention on the Service Aboard of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service Convention" or "Convention"), reprinted in 28 U.S.C.A. Fed. R. Civ. P. 4, at 210-229 (1992). Motion to Dismiss at 5-7. While service did not comply with the method of service emphasized by Defendant, Motion at 6-7, it did comply with Articles 10(b) and 10(c), two alternate methods of service prescribed by the Convention.

Defendant also contends that the return of service filed with the Court is not acceptable evidence of service of the Summons and Complaint. Motion to Dismiss at 7-8. To the contrary, the proof of service and amended proof of service do, in accordance with USCIT R. 4 (1), sufficiently demonstrate that Brown was personally served.

I

**Service Complied With Articles 10(b) and 10(c) of the Hague Service Convention**

HN8 The Hague Service Convention is an international treaty [**18] to which the United States and Canada are signatories. The scope of the Convention is set forth in its first article: it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service aboard." Convention Art. 1. The Supreme Court has held this [*1055] language mandatory and that "the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699, 100 L. Ed. 2d 722, 108 S. Ct. 2104 (1988). n8

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n8 The Convention was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. Schlunk, 486 U.S. at 698 (citations omitted). It was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. Id. The Convention entered into force for the United States on February 10, 1969, 20 U.S.T. 361, and for Canada on May 1, 1989, 28 U.S.C.A. Fed. R. Civ. P. 4, at 124 (Supp. 1997).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [**19]

It was necessary, in this civil case, to transmit the Summons and Complaint for service abroad because Plaintiff is the United States of America and Defendant is a resident of Ontario, Canada. See Compl. at P 4. Thus, Plaintiff was required to make service pursuant to the Hague Service Convention.

HN9 The principle mechanism for service of process under the Convention is set forth in Articles 2 through 7. Each signatory country is required to establish a central authority to receive requests from other countries for service of judicial documents. Convention Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method that the sender requests, provided that the method is compatible with local law. Id. at Art. 5. The central authority then provides the sender with a certificate of service that conforms to a specified model. Id. at Art. 6.

AIU 0418

In its accession to the Convention, Canada lists the Ministry of the Attorney General for Ontario as the central authority in Ontario designated to handle transmission and execution of requests for service. Canada, Notification **[**20]** in Conformity with Article 31, Paragraph c, of the Convention, at Declaration (A)(1), reprinted in 28 U.S.C.A. Fed. R. Civ. P. 4 at 123-125 (Supp. 1997) ("Canadian Accession Notification"). The Government concedes that it did not transmit Defendant's Summons and Complaint through this authority. See Plaintiff's Response at 8 n.7. Instead, it transmitted the documents through Canadian Customs. Id. at 13. Thus, Brown's contention that "the government failed to comply with the requirements of Article 5 of the Hague Service Convention" is correct. Motion to Dismiss at 7.

However, *HN10* "[a] state also may consent to methods of service within its boundaries other than a request to its central authority." Schlunk, 486 U.S. at 699. The Hague Service Convention prescribes several other methods of achieving service of process: through diplomatic or consular agents of the sending State (Art. 8); through consular channels to authorities within a contracting State who are authorized by that State to effect service (Art. 9); through the judicial officers, officials, or other competent persons of the State of destination (Art. 10); pursuant to any other agreement between the States **[**21]** involved (Art. 11); or pursuant to the internal law of the receiving State (Art. 19).

Service of process in this case conformed to two of the alternate methods of service found in Article 10 of the Convention. *HN11* Article 10(b) provides that, if the State of destination does not object, the Convention "shall not interfere with . . . the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Article 10(c) says that, if the receiving state does not object, the Convention shall not interfere with "the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." In its accession to the Convention, Canada expressly notes that it "has not declared to object to" either of these methods of service. See Canadian Accession Notification, Declaration III.

The issue of who qualifies as a "competent person" under Articles 10(b) and 10(c) of the Convention is one of first impression **[**22]** in this Court. Commentators have noted that "there is uncertainty as to the identity of the 'competent persons' who can be requested **[*1056]** to make service abroad and as to the law for determining competency . . . ." Gary B. Born & David Westin, Int'l Civil Litig. in United States Courts, 141 (1989). It is unclear "whether the authority of the 'competent persons' who may undertake to serve process in the state of destination is to be determined by the law of the state of origin, or by the law of the state of destination." Bruno A. Ristau, Int'l Judicial Assistance Civil and Commercial, Volume 1 § 4-3-5 (Int'l Law Institute, 1995 Revision). Those who would be manifestly "competent" to effect process abroad under American law may not be so under the law of other countries. Id. n9

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n9 Ristau notes:

> Under American law, private persons may (either by special appointment, see Rule 4(c), Fed. R. Civ. P., or under general statutory authority) serve process. Unlike most civil law countries, the U.S. has no general requirement that process be served by officials. It has been commonplace for American attorneys to request foreign attorneys, or individuals who happen to travel to a foreign country, to serve process on persons in those countries by personal delivery. Such foreign attorneys or private persons are manifestly 'competent' under

AIU 0419

American law to effect service abroad. It is, however, unlikely that they are 'competent' to effect valid service under the laws of most civil law jurisdictions."

Supra, at § 4-3-5.

- - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [**23]

Articles 10(b) and 10(c) have been the focus of litigation in only a few cases. In no case does the court provide a reasoned explanation of how it determined that service had been effected by and through "competent persons." n10

- - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n10 In Tamari v. Bache & Co., 431 F. Supp. 1226 (N.D.Ill. 1977), aff'd, 565 F.2d 1194 (7th Cir. 1977), cert. denied, 435 U.S. 905, 55 L. Ed. 2d 495, 98 S. Ct. 1450 (1978), a "court appointed process server" personally served the defendant in Paris. The court, without explanation, held that such service "would appear to fall within the provisions of Article 10 (b)" of the Hague Service Convention. Id. at 1229. In Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd., 106 F.R.D. 595, (E.D.Mo. 1985), the Court had previously entered an order authorizing an English solicitor to serve a resident of the United Kingdom. The court, without explanation, held that this method of service complied with Articles 10(b) and 10(c). Id. at 596.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The negotiating history of Articles [**24] 10(b) and 10(c) sheds little light on the intention of the draftsmen, although it does note:



> **M. Amram** (Etats-Unis) est preoccupe par la question de savoir ce que les auteurs de l'avant-project ont entendu par: *autres personnes competents.*
>
> **Le Rapporteur** apprend a M. Amram que ce membre de phrase a ete ajoute pour repondre a la demande du Royaume-Uni d'inclure les notifications faites par l'intermediaire des *solicitors.*
>
> **M. Amram** (Etats-Unis) conclut que, des lors, le sens de cette phrase pourrait etre different selon les lois de chaque Etat, ce a quoi cependant il ne fait pas objection."

Actes et Documents de la Dixieme Session, Conference de la Haye de Droit International Prive, at 238 (Oct. 7-28, 1964).

Canada does not indicate in its accession to the Convention who it considers "competent" to transmit, receive and serve process papers under Articles 10(b) and 10(c). Canada does not explicitly object to or qualify the language of either provision. See Canadian Accession Notification, Declaration III.

Canada does head its declaration acceding to Articles 10(b) and 10(c): "Service through judicial officers, notably 'huissiers' [**25] [bailiffs or deputy sheriffs], etc., of the requested State." Id. If headings are part of the official text, this could be read to indicate that Canada intended transmission of documents through judicial officers to be the only alternative to transmission through a central authority.

AIU 0420

Canadian Government practice, however, demonstrates a contrary intention. The Canadian customs officers who served process on Defendant are servants of the Government of Canada. If the Canadian Government believed its third Declaration limited service of process solely to judicial officers, it had only to speak to prohibit its Customs agents from serving process. By standing mute, the Canadian Government not only approved such activities, but affirmed their validity.

The rest of Canada's third declaration further supports an expansive interpretation of who is "competent" to transmit, receive and serve process in Canada under Articles 10(b) **[*1057]** and 10(c). Canada inserts an "etc." after "judicial officers" in its heading to Declaration III, impliedly including in its accession to Articles 10(b) and 10(c) the "officials," "other competent persons," and "person[s] interested in a judicial proceeding" **[**26]** mentioned in those provisions. Id.

It is not surprising that Canada does not impose strictures on the methods of service provided for in Articles 10(b) and 10(c) of the Convention: Canada's internal laws are themselves flexible about who is authorized to affect service of process. The laws of Ontario governing service of process do not proscribe government officials or even private persons from effecting service of process. n11 In Ontario, personal service is an accepted method of service. n12 Throughout Canada, personal service is the preferred method of service. See Delaire v. Delaire [1996] 147 Sask.R. 161, at P 46, quoting J.G. Castel in Canadian Conflict of Laws, 2nd Ed (Toronto, Butterworths 1986) ("In all the common law provinces and territories, personal service of process is the foundation of jurisdiction in actions in personam.") n13

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n11 See Rule 16, Rules of Civil Procedure, reprinted in Gary D. Watson & Michael McGowan, Ontario Civil Practice 1998, 358-368.

n12 Rule 16.01(1) of the Rules of Civil Procedure in Ontario provides that "an originating process shall be served personally as provided in rule 16.02 or, . . . by an alternative to personal service as provided in rule 16.03." Id. at 359. Rule 16.02(1) states that where a document is to be served personally on an individual, the service shall be made "by leaving a copy of the document with the individual." Id. at 360. Defendant was served in accordance with this Rule. **[**27]**

n13 An even less direct form of service is sufficient if the court is satisfied that the defendant has received actual notice of the proceedings. See, e.g., McGillis v. Hirtle [1992] 128 A.R. 83, at P 19, 1992 A.R. LEXIS 4176, *6 ("If the court is satisfied that the action has come to the attention of the defendant the object of service has been satisfied").

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In this Court, **HN12** "any person who is not a party and who is at least 18 years of age" is competent to effect service of a summons and complaint. USCIT R. 4(c).

Transmission of the Summons and Complaint from the U.S. Customs Service to Canada Customs clearly conformed to Article 10(b) of the Convention. "Officials" and "competent persons" were involved in both the United States and Canada. Jeremiah J. Sullivan sent a letter to Investigator Dana Andrews, Acting Manager of Canada Customs Investigations, Hamilton Region, requesting that Investigator Andrews' Office serve a copy of the Summons and Complaint in this case on Brown. Plaintiff's Exhibit A. Special Agent Sullivan is an "official" pursuant to Article 10(b): according to the Government, he is "the head of **[**28]** the Office of Investigations for the U.S. Customs Service in Buffalo, New York, and is responsible for all investigations conducted by that office." Plaintiff's Response at 12.

**AIU 0421**

Special Agent Sullivan transmitted Defendant's Summons and Complaint to an "official" and "competent person" of the State of destination: Investigator Andrews was "Acting Manager" of a regional Canada Customs Investigations office. Plaintiff's Exhibit A.

Andrews then transmitted the documents to another "competent person": Canada Customs Investigator Mark Leonard. Plaintiff's Exhibit B. In Leonard's Declaration of Service dated January 13, 1998, he affirms that he served the Summons on Defendant pursuant to Agent Sullivan's written request. Id. n14 Leonard also affirms that he was over eighteen years old when he effected service. Id. Thus, service of Defendant was "directly effected" by and through officials and "competent persons," pursuant to Article 10(b).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n14 Defendant does not dispute that service took place in the manner described by Leonard in his declarations of service.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[\*\*29]**

Service also complied with Article 10(c). 10(c) provides that "any person interested in a judicial proceeding" may effect service. There is no case authority that sheds light on who qualifies as a "person interested in a judicial proceeding," (and the negotiating history of the Convention is not helpful). Plaintiff argues that "considering that the fraud at issue in this case was investigated by Sullivan's office, Sullivan clearly also is an 'interested person' in this litigation." Plaintiff's Response at 12-13. Sullivan is the head of the Customs office that discovered and **[\*1058]** investigated Defendant's alleged violations of United States law; as such, he qualifies as an "interested person" who is eligible to effect service pursuant to Article 10(c) of the Hague Service Convention.

**2**

## The Declarations of Service Are Acceptable Evidence of the Delivery of the Summons and Complaint to Defendant

As further support for his Motion to Quash Service, Defendant argues that the Proof of Service of the Summons and Complaint is "defective in several respects." Motion to Dismiss at 7. He specifically alleges that it was not executed by a person designated by Declaration (A)(3) of Canada's **[\*\*30]** accession to the Hague Convention, does not specify the place of service, was not written in compliance with the requirements of 28 U.S.C. § 1746 for a declaration in lieu of affidavit executed abroad, and was not filed with the court and provided to Defendant's counsel in a timely manner. Id. at 7-8. Defendant cites no authority to support any of these contentions; none are valid arguments for quashing service of process in this case.

Defendant argues in his motion that the proof of Service was not executed by an authorized person, as required by Article 6 of the Hague Service Convention and Declaration (A)(3) of Canada's Accession Notification. n15 As discussed above, service in this case was effected pursuant to Articles 10(b) and 10(c) of the Hague Service Convention. Articles 10(b) and 10(c) are separate methods of transmission from the "Central Authority" mechanism that is governed by Article 6; thus, Plaintiff was not required to follow the procedures of Article 6 of the Convention and Declaration (A)(3) of Canada's Accession Notification.

- - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n15 *HN13* Article 6 of the Convention provides that "the Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a

AIU 0422

certificate in the form of the model annexed to the present Convention.

"The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

"The applicant may require that a certificate not completed by a Central Authority or a judicial authority shall be countersigned by one of these authorities.

"The certificate shall be forwarded directly to the applicant."

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[**31]**

The Government's Proof of Service did comply with the rules of this Court. *HN14*Proof of service of the Summons and Complaint is governed by USCIT R. 4(l). That Rule states that if service is effected under Rule 4(f)(1), as it was in this case, n16 proof of service must be made "pursuant to the applicable treaty or convention." Id. Articles 10(b) and 10(c) have no special enumerated procedures for establishing proof of service. In instances in which service is effected abroad and the applicable international agreement allows other means of service, Rule 4(l) states that proof of service shall "include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court."

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n16 *HN15*USCIT R. 4(f) states, in relevant part, that service "may be affected in a place not within any judicial district of the United States:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[**32]**

The proofs of service that Plaintiff filed with the Court are satisfactory evidence of delivery to Defendant. On June 18, 1997, Leonard, a "Canada Customs Investigator," executed a "Declaration of Service." Defendant's Exhibit 1. In the Declaration, Leonard states that he personally handed a copy of the Summons and Complaint in this action to Brown on June 18, 1997. Id. In an amended Declaration of Service executed on January 13, 1998, Leonard adds that he served Brown in the city of Burlington, Ontario; **[*1059]** he was thirty-five years old at the time of service; under the laws of Canada and Ontario he is a person competent to personally serve process upon individuals; and Defendant probably knew Leonard as a Canada Customs Investigator because Leonard had met with Defendant on several previous occasions in an official capacity. Plaintiff's Exhibit B.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n17 *HN16*USCIT R. 4(l) states that "if service is made by a person other than a United States marshal or deputy United States marshal, the person shall make affidavit thereof." 28 U.S.C. § 1746 allows an unsworn declaration made under penalty of perjury to replace an affidavit. See discussion infra, 1998 Ct. Intl. Trade LEXIS 129, *35-36.

AIU 0423

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[**33]**

Defendant does not dispute that he was served by Leonard in the manner described in these

detailed proofs of service. In the federal system, "some courts require a showing of 'strong and convincing evidence' to overcome a facially valid return of service generated by a private process server . . . while others simply have suggested that a rebuttable presumption of correctness might apply." Corcoran v. Shoney's Colonial, Inc., 1997 U.S. Dist. LEXIS 11889, 39 Fed. R. Serv. 3d (Callaghan) 345, 348 (W.D. Va. 1997) (citing Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, 126 F.R.D. 48, 52 (N.D.Ill. 1989); Frof, Inc. v. Harris, 695 F. Supp. 827, 829 (E.D.Pa. 1998)). Defendant fails to meet his burden under either standard. The detailed and specific declarations of service filed by Plaintiff are satisfactory evidence of service of process for this Court.

Leonard's first declaration of service does not, as Defendant points out, indicate where Defendant was served. Motion to Dismiss at 7. However, Rule 4(l) does not, as Plaintiff notes, require proof of service to specify the place of service. Plaintiff's Response at 17. Defendant does not cite any authority to support his contention [**34] that such specificity is required.

In any event, on January 13, 1998, Leonard executed a second declaration which indicates that Brown was served in the city of Burlington, Ontario. Plaintiff's Exhibit B. Because Rule 4 (l) is liberal about allowing proof of service to be amended, and Defendant does not contend he was prejudiced by the form of the original proof of service, even if the first declaration was insufficient, the Court will permit the second declaration and its specification of the place of service. Rule 4(l) ("The court may allow proof of service to be amended."). See Molokai Chamber of Commerce v. Kukui (Molokai), Inc., 891 F. Supp. 1389, 1394 n.2 (D.Hawaii 1995) (accepting corrected declarations after finding that the corrected declarations did not prejudice the defendants). n18

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n18 Defendant also cursorily mentions that the proof of service "does not indicate in any way that Leonard was authorized or qualified to serve legal process under the laws of the Commonwealth of Canada or the Province of Ontario." Motion to Dismiss at 4. This information is not a required part of the proof of service under USCIT R. 4. In any event, the amended service does affirm that "under the laws of Canada and Ontario, [Leonard is] a person competent to personally serve such process upon an individual." Plaintiff's Exhibit B.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - [**35]

Defendant asserts that Leonard's first declaration was invalid because, while it stated it was being made under penalty of perjury, it did not contain the phrase "under the laws of the United States." Motion to Dismiss at 7-8. Defendant ignores the fact that HN17 28 U.S.C. § 1746 explicitly states that declarations executed outside the United States must follow "substantially" the following form: "'I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct . . . .'" (emphasis added). Leonard's first declaration of service did substantially follow that form; it stated that "I [Leonard] declare under penalty of perjury that the foregoing is true and correct." Defendant's Exhibit 1. As Plaintiff points out, the opening statement of the declaration also states that it is being made "pursuant to the provisions of 28 U.S.C. § 1746," thus alerting the reader that the statements contained therein are being made under the laws of the United States. Id.; Plaintiff's Response at 17. Leonard's first declaration of service, therefore, conforms to the requirements of the statute.

Only two relevant cases have been cited to this [**36] Court, in both of which similar language was found to conform with 28 U.S.C. § 1746. See Matter of Muscatell, 106 B.R. 307, 309 (M.D.Fla. 1989) ("as long as the unsworn declaration includes the phrase, "penalty of perjury," and states the document is true, the verification requirements of 28 U.S.C. § 1746 will be satisfied"); Reliance Ins. Co. v. United States, 23 Cl. Ct. 108, 113 n.2 (1991)

AIU 0424

(declaration stating that it was made "pursuant to" section 1746 and that it **[*1060]** was "true and correct to the best of my knowledge, information and belief" held sufficient, even though it did not include "under penalty of perjury").

Finally, Defendant complains that Plaintiff "belatedly" filed its Proof of Service with the Court and provided Defendant's counsel with a copy. Motion to Dismiss at 7. Defendant points out that almost ten months elapsed between when the Complaint was filed and when Defendant's counsel received a copy of the Proof of Service. Motion to Dismiss at 7. However, Defendant does not indicate when, if ever, he requested a copy of the Proof of Service; nor does he cite any authority for the proposition that in this Court, ten months is an unreasonable period of time to **[**37]** wait to file a proof of service. In fact, Defendant's argument is at odds with the plain language of *HN18* USCIT R. 4(l), which provides that "failure to make proof of service does not affect the validity of the service." Accordingly, even if no proof of service had been filed (which is not the case), this Court would not be deprived of jurisdiction over Brown. See, e.g., <u>Nelle v. Ciotti, 151 F.R.D. 568, 570 (E.D.Penn. 1993)</u>; <u>Fox v. Regie Nationale des Usines Renault, 103 F.R.D. 453, 455 (W.D.Tenn. 1984).</u>

As there is no proof that Defendant suffered prejudice by receiving a copy of the Proof of Service when he did, because Defendant is not arguing that he was not in fact served by Mr. Leonard on June 18, 1997, as the declaration states, and because there are no defects in the declaration, the Court will not quash service simply because the proof of service was not filed immediately after the Complaint was filed.

**C**

AIU 0425

Service: Get by LEXSEE®
Citation: 20 U.S.T. 361

*20 U.S.T. 361; 1969 U.S.T. LEXIS 152, ***

U.S. Treaties on LEXIS

MULTILATERAL

Service Abroad of Judicial and Extrajudicial Documents

TIAS 6638

20 U.S.T. 361; 1969 U.S.T. LEXIS 152

November 15, 1965, Date-Signed

February 10, 1969, Date-In-Force

**STATUS:**
 **[*1]**  Convention done at The Hague November 15, 1965;
Ratification advised by the Senate of the United States of America April 14, 1967;
Ratified by the President of the United States of America April 24, 1967;
Ratification of the United States of America deposited with the Ministry of Foreign Affairs of
the Netherlands August 24, 1967; n1
Proclaimed by the President of the United States of America January 8, 1969;
Entered into force February 10, 1969.

n1 For designations and declarations made in connection with the deposit, see page 373.
[Footnote added by the Department of State.]

CONVENTION RELATIVE A LA SIGNIFICATION ET LA NOTIFICATION A L'ETRANGER DES
ACTES JUDICIAIRES ET EXTRAJUDICIAIRES EN MATIERE CIVILE OU COMMERCIALE
CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN
CIVIL OR COMMERCIAL MATTERS

**TEXT:**
BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS the convention on the service abroad of judicial and extrajudicial documents in
civil or commercial matters done at The Hague on November 15, 1965, was signed for the
United States of America on that same date;

WHEREAS a certified copy of the text of the said convention in the English and  **[*2]**  French
languages is word for word as follows:

Les Etats signataires de la presente Convention,

Desirant creer les moyens appropries pour que les actes judiciaires et extrajudiciaires qui
doivent etre signifies ou notifies a l'etranger soient connus de leurs destinataires en temps
utile,

Soucieux d'ameliorer a cette fin l'entraide judiciaire mutuelle en simplifiant et en accelerant
la procedure,

**AIU 0426**

Ont resolu de conclure une Convention a ces effets et sont convenus des dispositions suivantes:

Article premier

La presente Convention est applicable, en matiere civile ou commerciale, dans tous les cas ou un acte judiciaire ou extrajudiciaire doit etre transmis a l'etranger pour y etre signifie ou notifie.

La Convention ne s'applique pas lorsque l'adresse du destinataire de l'acte n'est pas connue.

CHAPITRE I - ACTES JUDICIAIRES

Article 2

Chaque Etat contractant designe une Autorite centrale qui assume, conformement aux articles 3 a 6, la charge de recevoir les demandes de signification ou de notification en provenance d'un autre Etat contractant et d'y donner suite.

L'Autorite centrale est organisee selon les modalites prevues par l'Etat requis.

Article 3

L'autorite ou l'officier ministeriel  [*3]  competents selon les lois de l'Etat d'origine adresse a l'Autorite centrale de l'Etat requis une demande conforme a la formule modele annexee a la presente Convention, sans qu'il soit besoin de la legalisation des pieces ni d'une autre formalite equivalente.

La demande doit etre accompagnee de l'acte judiciaire ou de sa copie, le tout en double exemplaire.

Article 4

Si l'Autorite centrale estime que les dispositions de la Convention n'ont pas ete respectees, elle en informe immediatement le requerant en precisant les griefs articules a l'encontre de la demande.

Article 5

L'Autorite centrale de l'Etat requis procede ou fait proceder a la signification ou a la notification de l'acte:

a) soit selon les formes prescrites par la legislation de l'Etat requis pour la signification ou la notification des actes dresses dans ce pays et qui sont destines aux personnes se trouvant sur son territoire,

b) soit selon la forme particuliere demandee par le requerant, pourvu que celle-ci ne soit pas incompatible avec la loi de l'Etat requis.

Sauf le cas prevu a l'alinea premier, lettre b), l'acte peut toujours etre remis au destinataire qui l'accepte volontairement.

**AIU 0427**

Si l'acte doit etre signifie ou  [*4]  notifie conformement a l'alinea premier, l'Autorite centrale peut demander que l'acte soit redige ou traduit dans la langue ou une des langues officielles de son pays.

La partie de la demande conforme a la formule modele annexee a la presente Convention, qui

contient les elements essentiels de l'acte, est remise au destinataire.

Article 6

L'Autorite centrale de l'Etat requis ou toute autorite qu'il aura designee a cette fin etablit une attestation conforme a la formule modele annexee a la presente Convention.

L'attestation relate l'execution de la demande; elle indique la forme, le lieu et la date de l'execution ainsi que la personne a laquelle l'acte a ete remis. Le cas echeant, elle precise le fait qui aurait empeche l'execution.

Le requerant peut demander que l'attestation qui n'est pas etablie par l'Autorite centrale ou par une autorite judiciair soit visee par l'une de ces autorites.

L'attestation est directement adressee au requerant.

Article 7

Les mentions imprimees dans la formule modele annexee a la presente Convention sont obligatoirement redigees soit en langue francaise, soit en langue anglaise. Elles peuvent, en outre, etre redigees dans la langue ou une des langues officielles **[*5]** de l'Etat d'origine.

Les blancs correspondant a ces mentions sont remplis soit dans la langue de l'Etat requis, soit en langue francaise, soit en langue anglaise.

Article 8

Chaque Etat contractant a la faculte de faire proceder directement, sans contrainte, par les soins de ses agents diplomatiques ou consulaires, aux significations ou notifications d'actes judiciaires aux personnes se trouvant a l'etranger.

Tout Etat peut declarer s'opposer a l'usage de cette faculte sur son territoire, sauf si l'acte doit etre signifie ou notifie a un ressortissant de l'Etat d'origine.

Article 9

Chaque Etat contractant a, de plus, la faculte d'utiliser la voie consulaire pour transmettre, aux fins de signification ou de notification, des actes judiciaires aux autorites d'un autre Etat contractant que celui-ci a designees.

Si des circonstances exceptionnelles l'exigent, chaque Etat contractant a la faculte d'utiliser, aux memes fins, la voie diplomatique.

Article 10

La presente Convention ne fait pas obstacle, sauf si l'Etat de destination declare s'y opposer:

a) a la faculte d'adresser directement, par la voie de la poste, des actes judiciaires aux personnes se trouvant a l'etranger,

b) a la faculte, **[*6]** pour les officiers ministeriels, fonctionnaires ou autres personnes competents de l'Etat d'origine, de faire proceder a des significations ou notifications d'actes judiciaires directement par les soins des officiers ministeriels, fonctionnaires ou autres personnes competents de l'Etat de destination,

**AIU 0428**

c) a la faculte, pour toute personne interessee a une instance judiciaire, de faire proceder a des significations ou notifications d'actes judiciaires directement par les soins des officiers

ministeriels, fonctionnaires ou autres personnes competents de l'Etat de destination.

Article 11

La presente Convention ne s'oppose pas a ce que des Etats contractants s'entendent pour admettre, aux fins de signification ou de notification des actes judiciaires, d'autres voies de transmission que celles prevues par les articles qui precedent et notamment la communication directe entre leurs autorites respectives.

Article 12

Les significations ou notifications d'actes judiciaires en provenance d'un Etat contractant ne peuvent donner lieu au paiement ou au remboursement de taxes ou de frais pour les services de l'Etat requis.

Le requerant est tenu de payer ou de rembourser les frais occasionnes par:  **[*7]**

a) l'intervention d'un officier ministeriel ou d'une personne competente selon la loi de l'Etat de destination,

b) l'emploi d'une forme particuliere.

Article 13

L'execution d'une demande de signification ou de notification conforme aux dispositions de la presente Convention ne peut etre refusee que si l'Etat requis juge que cette execution est de nature a porter atteinte a sa souverainete ou a sa securite.

L'execution ne peut etre refusee pour le seul motif que la loi de l'Etat requis revendique la competence judiciaire exclusive dans l'affaire en cause ou ne connait pas de voie de droit repondant a l'objet de la demande.

En cas de refus, l'Autorite centrale en informe immediatement le requerant et indique les motifs.

Article 14

Les difficultes qui s'eleveraient a l'occasion de la transmission, aux fins de signification ou de notification, d'actes judiciaires seront reglees par la voie diplomatique.

Article 15

Lorsqu'un acte introductif d'instance ou un acte equivalent a du etre transmis a l'etranger aux fins de signification ou de notification, selon les dispositions de la presente Convention, et que le defendeur ne comparait pas, le juge est tenu de surseoir a statuer aussi longtemps  **[*8]**  qu'il n'est pas etabli:

a) ou bien que l'acte a ete signifie ou notifie selon les formes prescrites par la legislation de l'Etat requis pour la signification ou la notification des actes dresses dans ce pays et qui sont destines aux personnes se trouvant sur son territoire,

b) ou bien que l'acte a ete effectivement remis au defendeur ou a sa demeure selon un autre procede prevu par la presente Convention,

et que, dans chacune de ces eventualites, soit la signification ou la notification, soit la remise a eu lieu en temps utile pour que le defendeur ait pu se defendre.

**AIU 0429**

Chaque Etat contractant a la faculte de declarer que ses juges, nonobstant les dispositions de l'alinea premier, peuvent statuer si les conditions suivantes sont reunies, bien qu'aucune attestation constatant soit la signification ou la notification, soit la remise, n'ait ete recue:

a) l'acte a ete transmis selon un des modes prevus par la presente Convention,

b) un delai que le juge appreciera dans chaque cas particulier et qui sera d'au moins six mois, s'est ecoule depuis la date d'envoi de l'acte,

c) nonobstant toutes diligences utiles aupres des autorites competentes de l'Etat requis, aucune attestation n'a pu etre **[*9]** obtenue.

Le present article ne fait pas obstacle a ce qu'en cas d'urgence, le juge ordonne toutes mesures provisoires ou conservatoires.

Article 16

Lorsqu'un acte introductif d'instance ou un acte equivalent a du etre transmis a l'etranger aux fins de signification ou de notification, selon les dispositions de la presente Convention, et qu'une decision a ete rendue contre un defendeur qui n'a pas comparu, le juge a la faculte de relever ce defendeur de la forclusion resultant de l'expiration des delais de recours, si les conditions suivantes sont reunies:

a) le defendeur, sans qu'il y ait eu faute de sa part, n'a pas eu connaissance en temps utile dudit acte pour se defendre et de la decision pour exercer un recours,

b) les moyens du defendeur n'apparaissent pas denues de tout fondement.

La demande tendant au releve de la forclusion est irrecevable si elle n'est pas formee dans un delai raisonnable a partir du moment ou le defendeur a eu connaissance de la decision.

Chaque Etat contractant a la faculte de declarer que cette demande est irrecevable si elle est formee apres l'expiration d'un delai qu'il precisera dans sa declaration, pourvu que ce delai ne soit pas inferieur a un an **[*10]** a compter du prononce de la decision.

Le present article ne s'applique pas aux decisions concernant l'etat des personnes.

CHAPITRE II - ACTES EXTRAJUDICIAIRES

Article 17

Les actes extrajudiciaires emanant des autorites et officiers ministeriels d'un Etat contractant peuvent etre transmis aux fins de signification ou de notification dans un autre Etat contractant selon les modes et aux conditions prevus par la presente Convention.

CHAPITRE III - DISPOSITIONS GENERALES

Article 18

Tout Etat contractant peut designer, outre l'Autorite centrale, d'autres autorites dont il determine les competences.

Toutefois, le requerant a toujours le droit de s'adresser directement a l'Autorite centrale.

Les Etats federaux ont la faculte de designer plusieurs Autorites centrales.

Article 19                                                                 **AIU 0430**

La presente Convention ne s'oppose pas a ce que la loi interne d'un Etat contractant permette d'autres formes de transmission non prevues dans les articles precedents, aux fins de signification ou de notification, sur son territoire, des actes venant de l'etranger.

Article 20

La presente Convention ne s'oppose pas a ce que des Etats contractants s'entendent pour deroger:

a) a l'article 3, alinea 2, en ce qui concerne **[*11]** l'exigence du double exemplaire des pieces transmises,

b) a l'article 5, alinea 3, et a l'article 7, en ce qui concerne l'emploi des langues,

c) a l'article 5, alinea 4,

d) a l'article 12, alinea 2.

Article 21

Chaque Etat contractant notifiera au Ministere des Affaires Etrangeres des Pays-Bas soit au moment du depot de son instrument de ratification ou d'adhesion, soit ulterieurement:

a) la designation des autorites prevues aux articles 2 et 18;

b) la designation de l'autorite competente pour etablir l'attestation prevue a l'article 6;

c) la designation de l'autorite competente pour recevoir les actes transmis par la voie consulaire selon l'article 9.

Il notifiera, le cas echeant, dans les memes conditions:

a) son opposition a l'usage des voies de transmission prevues aux articles 8 et 10,

b) les declarations prevues aux articles 15, alinea 2, et 16, alinea 3.

c) toute modification des designations, opposition et declarations mentionnees ci-dessus.

Article 22

La presente Convention remplacera dans les rapports entre les Etats qui l'auront ratifiee, les articles 1 a 7 des Conventions relatives a la procedure civile, respectivement signees a La Haye, le 17 juillet 1905 et le premier **[*12]** mars 1954, dans la mesure ou lesdits Etats sont Parties a l'une ou a l'autre de ces Conventions.

Article 23

La presente Convention ne porte pas atteinte a l'application de l'article 23 de la Convention relative a la procedure civile, signee a La Haye, le 17 juillet 1905, ni de l'article 24 de celle signee a La Haye, le premier mars 1954.

Ces articles ne sont toutefois applicables que s'il est fait usage de modes de communication identiques a ceux prevus par lesdites Conventions.

Article 24

AIU 0431

Get a Document - by Citation - 20 U.S.T. 361
Page 7 of 22
Case 3:07-cv-05491-PJH     Document 33-10     Filed 06/16/2008     Page 66 of 81

Les accords additionnels auxdites Conventions de 1905 et de 1954, conclus par les Etats contractants, sont consideres comme egalement applicables a la presente Convention a moins que les Etats interesses n'en conviennent autrement.

Article 25

Sans prejudice de l'application des articles 22 et 24, la presente Convention ne deroge pas aux Conventions auxquelles les Etats contractants sont ou seront Parties et qui contiennent des dispositions sur les matieres reglees par la presente Convention.

Article 26

La presente Convention est ouverte a la signature des Etats represents a la Dixieme session de la Conference de La Haye de droit international prive.

Elle sera ratifiee et les instruments de ratification [*13] seront deposes aupres du Ministere des Affaires Etrangeres des Pays-Bas.

Article 27

La presente Convention entrera en vigueur le soixantieme jour apres le depot du troisieme instrument de ratification prevu par l'article 26, alinea 2.

La Convention entrera en vigueur, pour chaque Etat signataire ratifiant posterieurement, le soixantieme jour apres le depot de son instrument de ratification.

Article 28

Tout Etat non represente a la Dixieme session de la Conference de La Haye de droit international prive pourra adherer a la presente Convention apres son entree en vigueur en vertu de l'article 27, alinea premier. L'instrument d'adhesion sera depose aupres du Ministere des Affaires Etrangeres des Pays-Bas.

La Convention n'entrera en vigueur pour un tel Etat qu'a defaut d'opposition de la part d'un Etat ayant ratifie la Convention avant ce depot, notifiee au Ministere des Affaires Etrangeres des Pays-Bas dans un delai de six mois a partir de la date a laquelle ce Ministere lui aura notifie cette adhesion.

A defaut d'opposition, la Convention entrera en vigueur pour l'Etat adherant le premier jour du mois qui suit l'expiration du dernier des delais mentionnes a l'alinea precedent.

Article [*14] 29

Tout Etat, au moment de la signature, de la ratification ou de l'adhesion, pourra declarer que la presente Convention s'etendra a l'ensemble des territoires qu'il represente sur le plan international, ou a l'un ou plusieurs d'entre eux. Cette declaration aura effet au moment de l'entree en vigueur de la Convention pour ledit Etat.

Par la suite, toute extension de cette nature sera notifiee au Ministere des Affaires Etrangeres des Pays-Bas.

La Convention entrera en vigueur, pour les territoires vises par l'extension, le soixantieme jour apres la notification mentionnee a l'alinea precedent.

**AIU 0432**

Article 30

La presente Convention aura une duree de cinq ans a partir de la date de son entree en

vigueur conformement a l'article 27, alinea premier, meme pour les Etats qui l'auront ratifiee ou y auront adhere posterieurement.

La Convention sera renouvclee tacitement de cinq en cinq ans, sauf denonciation.

La denonciation sera, au moins six mois avant l'expiration du delai de cinq ans, notifiee au Ministere des Affaires Etrangeres des Pays-Bas.

Elle pourra se limiter a certains des territoires auxquels s'applique la Convention.

La denonciation n'aura d'effet qu'a l'egard de l'Etat qui l'aura **[*15]** notifiee. La Convention restera en vigueur pour les autres Etats contractants.

Article 31

Le Ministere des Affaires Etrangeres des Pays-Bas notifiera aux Etats vises a l'article 26, ainsi qu'aux Etats qui auront adhere conformement aux dispositions de l'article 28:

a) les signatures et ratifications visees a l'article 26;

b) la date a laquelle la presente Convention entrera en vigueur conformement aux dispositions de l'article 27, alinea premier;

c) les adhesions visees a l'article 28 et la date a laquelle elles auront effet;

d) les extensions visees a l'article 29 et la date a laquelle elles auront effet;

e) les designations, opposition et declarations mentionnees a l'article 21;

f) les denonciations visees a l'article 30, alinea 3.

EN FOI DE QUOI, les soussignes, dument autorises, ont signe la presente Convention.

FAIT a La Haye, le 15 novembre 1965, en francais et en anglais, les deux textes faisant egalement foi, en un seul exemplaire, qui sera depose dans les archives du Gouvernement des Pays-Bas et dont une copie certifiee conforme sera remise, par la voie diplomatique, a chacun des Etats representes a la Dixieme session de la Conference de La Haye de droit international prive. **[*16]**

The States signatory to the present Convention,

Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,

Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.

This Convention shall not apply where the address of the person to be served with the document is not known.

**AIU 0433**

CHAPTER I - JUDICIAL DOCUMENTS

Article 2

Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.

Each State shall organise the Central Authority in conformity with its own law.

Article 3

The authority or judicial officer competent under the law of the State in which the documents originate **[*17]** shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either --

(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

(b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, **[*18]** the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

Article 6

**AIU 0434**

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented

Get a Document - by Citation - 20 U.S.T. 361
Page 10 of 22
Case 3:07-cv-05491-PJH    Document 33-10    Filed 06/16/2008    Page 69 of 81

service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be **[*19]** written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

Article 8

Each contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

Article 9

Each contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another contracting State wich are designated by the latter for this purpose.

Each contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

Article 10

Provided the State of destination does not object, the present Convention shall not interfere with --

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial **[*20]** officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Article 11

The present Convention shall not prevent two or more contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding articles and, in particular, direct communication between their respective authorities.

Article 12

**AIU 0435**

The service of judicial documents coming from a contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.

The applicant shall pay or reimburse the costs occasioned by --

(a) the employment of a judicial officer or of a person competent under the law of the State of destination,

(b) the use of a particular method of service.

Article 13

Where a request for service **[*21]** complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.

It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.

The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that --

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b) the document was actually delivered to the defendant **[*22]** or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled --

(a) the document was transmitted by one of the methods provided for in this Convention,

(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

**AIU 0436**

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, **[*23]** and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled --

(a) the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

(b) the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This article shall not apply to judgments concerning status or capacity of persons.

CHAPTER II - EXTRAJUDICIAL DOCUMENTS

Article 17

Extrajudicial documents emanating from authorities and judicial officers of a contracting State may be transmitted for the purpose of service in another contracting State by the methods **[*24]** and under the provisions of the present Convention.

CHAPTER III - GENERAL CLAUSES

Article 18

Each contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

Article 19

To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

Article 20

The present Convention shall not prevent an agreement between any two or more contracting States to dispense with --

AIU 0437

(a) the necessity for duplicate copies of transmitted documents as required by the second paragraph of article 3,

(b) the language requirements of the third paragraph of article 5 and article 7,

~~(c) the provisions of the fourth paragraph of article 5,~~

(d) the provisions of the second paragraph of article 12.

Article 21

Each contracting State shall, at the time **[*25]** of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following --

(a) the designation of authorities, pursuant to articles 2 and 18,

(b) the designation of the authority competent to complete the certificate pursuant to article 6,

(c) the designation of the authority competent to receive documents transmitted by consular channels, pursuant to article 9.

Each contracting State shall similarly inform the Ministry, where appropriate, of --

(a) opposition to the use of methods of transmission pursuant to articles 8 and 10,

(b) declarations pursuant to the second paragraph of article 15 and the third paragraph of article 16,

(c) all modifications of the above designations, oppositions and declarations.

Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, n1 and on 1st March 1954, n2 this Convention shall replace as between them articles 1 to 7 of the earlier Conventions.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 99 BFSP 990.

n2 286 UNTS 265

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - **[*26]**

Article 23

The present Convention shall not affect the application of article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.

These articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

Article 24

AIU 0438

Supplementary agreements between parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

Article 25

Without prejudice to the provisions of articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the contracting States are, or shall become, Parties.

Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.

It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

Article 27

The present Convention shall enter into force on the **[*27]** sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of article 26.

The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

Article 29

Any State may, at **[*28]** the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extention on the sixtieth day after the notification referred to in the preceding paragraph.

Article 30

AIU 0439

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards **[\*29]** the State which has notified it. The Convention shall remain in force for the other contracting States.

Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in article 26, and to the States which have acceded in accordance with article 28, of the following --

(a) the signatures and ratifications referred to in article 26;

(b) the date on which the present Convention enters into force in accordance with the first paragraph of article 27;

(c) the accessions referred to in article 28 and the dates on which they take effect;

(d) the extensions referred to in article 29 and the dates on which they take effect;

(e) the designations, oppositions and declarations referred to in article 21;

(f) the denunciations referred to in the third paragraph of article 30.

IN WITNESS WHEREOF the undersigned, being duly authorised thereto, have signed the present Convention.

DONE at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the **[\*30]** diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

WHEREAS the Senate of the United States of America by its resolution of April 14, 1967, two-thirds of the Senators present concurring therein, did advise and consent to the ratification of the said convention;

WHEREAS the President of the United States of America on April 24, 1967 duly ratified the convention, in pursuance of the advice and consent of the Senate;

WHEREAS Article 27 provides that the convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification;

WHEREAS instruments of ratification were deposited with the Ministry of Foreign Affairs of the Netherlands as follows: United States of America on August 24, 1967; the United Kingdom of Great Britain and Northern Ireland on November 17, 1967; and the United Arab Republic on December 12, 1968;

**AIU 0440**

AND WHEREAS, pursuant to the provisions of Article 27 of the convention, the convention will enter into force on February 10, 1969;

NOW, THEREFORE, be it known that I, Lyndon B. Johnson, President of the United States of America, do hereby proclaim and make public [*31] the convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, to the end that the convention and every article and clause thereof shall be observed and fulfilled with good faith on and after February 10, 1969, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this eighth day of January in the year of our Lord one thousand nine hundred sixty-nine and of the Independence of the United States of America the one hundred ninety-third.

[SEAL]

## Designations and Declarations Made on the Part of the United States in Connection with the Deposit of the United States Ratification

1. In accordance with Article 2, the United States Department of State is designated as the Central Authority to receive requests for service from other Contracting States and to proceed in conformity with Articles 3 to 6.

2. In accordance with Article 6, in addition to the United States Department of State, the United States Department [*32] of Justice and the United States Marshal or Deputy Marshal for the judicial district in which service is made are designated for the purpose of completing the certificate in the form annexed to the Convention.

3. In accordance with the second paragraph of Article 15, it is declared that the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled.

4. In accordance with the third paragraph of Article 16, it is declared that an application under Article 16 will not be entertained if it is filed (a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or (b) after the expiration of one year following the date of the judgment, whichever is later.

5. In accordance with Article 29, it is declared that the Convention shall extend to all the States of the United States, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands.

**SIGNATORIES:**
Pour la Republique Federale d'Allemagne, [*33] sous reserve de ratification
(s.) KARL HERMANN KNOKE

Pour l'Autriche,

Pour la Belgique,
(s) VAN DER STRATEN 21 I 1966

Pour le Danemark,

**AIU 0441**

Pour l'Espagne,

Pour les Etats-Unis d'Amerique,
(s.) WILLIAM ROYALL TYLER

Pour la Finlande,
(s.) SIGURD VON NUMERS

Pour la France,

Pour la Grece,

Pour l'Irlande,

Pour Israel
(s.) DAVID SHALTIEL 25.XI.1965

Pour l'Italie,

Pour le Japon,

Pour le Luxembourg,

Pour la Norvege,

Pour les Pays-Bas,
(s.) J. LUNS

Pour le Portugal,

Pour la Republique Arabe Unie,
(s) SAYED FAHMI 1st of March 1966

Pour le Royaume-Uni de Grande-Bretagne et d'Irlande du Nord,
(s) PETER GARRAN 10th December 1965

Pour la Suede,

Pour la Suisse,

Pour la Turquie,

Pour la Yougoslavie,

For the Federal Republic of Germany,
(s.) KARL HERMANN KNOKE

For Austria,

For Belgium,
(s) VAN DER STRATEN 21 I 1966

For Denmark,

For Spain,

For the United States of America,

**AIU 0442**

(s.) WILLIAM ROYALL TYLER

For Finland,
(s.) SIGURD VON NUMERS

For France,

For Greece,

For Ireland,

For Israel,
(s.) DAVID SHALTIEL 25.XI.1965

For Italy,

For Japan,

For Luxembourg,

For Norway,

For the Netherlands,
(s.) J. LUNS

For Portugal,

For the United  **[\*34]**  Arab Republic,
(s) SAYED FAHMI 1st of March 1966

For the United Kingdom of Great Britain and Northern Ireland,
(s) PETER GARRAN 10th December 1965

For Sweden,

For Switzerland,

For Turkey,

For Yugoslavia,

LYNDON B. JOHNSON

By the President: DEAN RUSK
*Secretary of State*

**APPENDICES:**
ANNEXE A LA CONVENTION

*Formules, de demande et d'attestation*

DEMANDE

AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A DETRANGER D'UN ACTE JUDICIAIRE
OU EXTRAJUDICIAIRE

Convention relative a la signification et a la notification a l'etranger des actes judiciaires ou

AIU 0443

extrajudiciaires en matrere [ILLEGIBLE WORD] ou commerciale, signce a La Haye, le ___ 196

Identite et adresse du requerant

Adresse de l'autorite destinataire

Le requerant soussigne a l'honneur de faire parvenir -- en double exemplaire -- a l'autorite destinataire les documents ci-dessous enumeres, en la priant conformement a l'article 5 de la Convention precitee, d'en faire remettre sans retard un exemplaire au destinataire, savoir: (identite et adresse) ___
a) selon les formes legales (article 5, alinea premier, lettre a) *.
b) selon la forme particuliere suivante (article 5, alinea premier, lettre b) *: ___
c) le cas echeant, par remise **[*35]** simple (article 5, alinea 2) *.

Cette autorite est price de renvoyer ou de faire renvoyer au requerant un exemplaire de l'acte -- et de ses annexes * -- avec l'attestation figurant au verso.

*Enumeration des pieces ___*

Fait a ___, le ___

Signature et/ou cachet.

* Rayer les mentions inutiles.

*Verso de la demande*

ATTESTATION

L'autorite soussignee a l'honneur d'attester conformement a l'article 6 de ladite Convention,

1. que la demande a ete executee *

- le (date) ___

- a (localite, rue, numero) ___

- dans une des formes suivantes prevues a l'article 5:

a) selon les formes legales (article 5, alinea premier, lettre a) *.
b) selon la forme particuliere suivante *: ___
c) par remise simple *.

Les documents mentionnes dans la demande ont ete remis a:

- (identite et qualite de la personne) ___

- liens de parente, de subordination ou autres, avec le destinataire de l'acte: ___

2. que la demande n'a pas ete executee, en raison des faits suivants *: ___

Conformement a l'article 12, alinea 2, de ladite Convention, le requerant est prie de payer ou de rembourser les frais dont le detail figure au memoire ci-joint *.

*Anneses*

**AIU 0444**

Pieces renvoyees: ____

Le cas echeant, **[\*36]** les documents justificatifs de l'execution: ____

Fait a ____, le ____

Signature et/ou cachet.

\* Rayer les meations inutiles.

ELEMENTS ESSENTIELS DE L'ACTE

Convention relative a la signification et a la notification a l'etranger des actes judiciaires et extrajudiciaires en matiere civile ou commerciale, signee a La Haye, le ____ 196.

(article 5, alinea 4)

Nom et adresse de l'autorite requerante: ____
Identite des parties \*: ____

ACTE JUDICIAIRE \*\*
Nature et objet de l'acte: ____
Nature et objet de l'instance, le cas echeant, le montant du litige: ____
Date et lieu de la comparution \*\*: ____
Juridiction qui a rendu la decision \*\*: ____
Date de la decision \*\*: ____
Indication des delais figurant dans l'acte \*\*: ____

ACTE EXTRAJUDICIAIRE \*\*
Nature et objet de l'acte: ____
Indication des delais figurant dans l'acte \*\*: ____
\* S'il y a lieu, identite et adresse de la personne interesse a la transmission de l'acte.
\*\* Rayer les mentions inutiles.

ANNEX TO THE CONVENTION

*Forms*

REQUEST

FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, ____ 196.

Identity and address **[\*37]** of the applicant

Address of receiving authority

The undersigned applicant has the honour to transmit -- in duplicate -- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., (identity and address) ____
(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention \*.
(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5) \*: ____
(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5) \*

AIU 0445

The authority is requested to return or to have returned to the applicant a copy of the documents -- and of the annexes * -- with a certificate as provided on the reverse side.

*List of documents* ____

Done at ____, the ____

Signature and/or stamp.

\* Delete if inappropriate.

*Reverse of the request*

CERTIFICATE

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
1) that the document has been served *

- the (date) ____

- at (place, street, number) ____

- In one of the following methods authorised  **[\*38]** by article 5 --

    (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention *.
    (b) in accordance with the following particular method *: ____
    (c) by delivery to the addressee, who accepted it voluntarily *.

The documents referred to in the request have been delivered to:

- (identity and description of person) ____

- relationship to the addressee (family, business or other): ____

2) that the document has not been served, by reason of the following facts *: ____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *

*Annexes*
Documents returned: ____

In appropriate cases, documents establishing the service: ____

Done at ____, the ____

Signature and/or stamp.

\* Delete if inappropriate.

SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the service abroad of judicial and extrajudicial documents in civil or

**AIU 0446**

commercial matters, signed at The Hague, the ____ 196

(article 5, fourth paragraph)

Name and address of the requesting authority: ____
Particulars of the parties *: ____

JUDICIAL DOCUMENT **

Nature and purpose **[\*39]** of the document: ____
Nature and purpose of the proceedings and, where appropriate, the amount in dispute: ____
Date and place for entering appearance **: ____
Court which has given judgment **: ____
Date of judgment **: ____
Time limits stated in the document **: ____

EXTRAJUDICIAL DOCUMENT **
Nature and purpose of the document: ____
Time limits stated in the document **: ____

\* If appropriate, ideatity and address of the person interested in the transmission of the document.
\*\* Delete if inappropriate.

COPIE CETIFIEE CONFORME a L'ORIGINAL

La Haye, le 23 mai 1966

Le Conseiller des Traites au Ministere des Affaires Etrangeres des Pays-Bas,

PROF. DR. A. M. STUYT

Service:    **Get by LEXSEE®**
Citation:   **20 U.S.T. 361**
View:       Full
Date/Time:  Friday, March 7, 2003 - 8:05 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**AIU 0447**