Semha Alwaya (CSBN 141999)
Trelawney James-Riechert (CSBN 160853)
Law Offices of Semha Alwaya
2200 Powell Street, Suite 110
Emeryville, California 94608
Telephone 510-595-7900
Facsimile 510-595-9049

Attorneys for Defendant,
TIG INSURANCE COMPANY
ERRONEOUSLY SUED HEREIN AS
TIG SPECIALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AIU INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ACCEPTANCE INSURANCE COMPANY, a Delaware corporation; TIG SPECIALTY INSURANCE COMPANY, a California corporation; ROYAL INSURANCE COMPANY OF AMERICA, a Delaware corporation; AMERICAN SAFETY RISK RENTETION GROUP, INC., a Vermont corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 07-CV-05491 PJH<br><br>**TIG INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     October 29, 2008<br>Time:    9:00 a.m.<br>Judge:   Hon. Phyllis J Hamilton<br>Courtroom: 3, 17th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2008, at 9:00 a.m., or as soon thereafter as the

matter may be heard before the Honorable Phyllis J. Hamilton, in Courtroom 3, 17th Floor, of the

above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant TIG

Insurance Company ("TIG"), erroneously sued herein as TIG Specialty Insurance Company, will,

1 | and hereby does, move this Court for an Order pursuant to Rule 12(c) of the Federal Rules of Civil

2 | Procedure, for an order granting judgment on the pleadings as to TIG on AIU Insurance Company's

3 | ("AIU") First Amended Complaint's Second Claim for Relief for Declaratory Relief, the Fourth

4 | Claim for Relief for Equitable Indemnity and Contribution, and the Fifth Claim for Relief for

5 | Equitable Subrogation.

6 |      The grounds for this Motion is that AIU's First Amended Complaint does not state a claim

7 | against TIG upon which relief can be granted. This Motion is based upon this Notice, the attached

8 | Memorandum of Points and Authorities, the record, pleadings, and papers on file herein, and upon

9 | such other further evidence as may be presented at the time of the hearing.

10

11 | DATED:  August 28, 2008                     LAW OFFICES OF SEMHA ALWAYA

12

13

14 |                                         Semha Alwaya
                                        Attorneys for Defendant
                                        TIG INSURANCE COMPANY
                                        ERRONEOUSLY SUED HEREIN AS
                                        TIG SPECIALTY INSURANCE
                                        COMPANY

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   I.     INTRODUCTION

3          The Second Claim for Relief in AIU Insurance Company's ("AIU") First Amended

4   Complaint is for Declaratory Relief, the Fourth Claim for Relief is for Equitable Indemnity and

5   Contribution, and the Fifth Claim is for Equitable Subrogation.  None of these causes of action states

6   a claim against TIG Insurance Company ("TIG"), erroneously sued herein as TIG Specialty

7   Insurance Company, upon which relief can be granted.  AIU's Second Claim for Declaratory Relief is

8   subject to dismissal because the declaratory relief sought by AIU would serve no useful purpose, and

9   is duplicative of the relief sought in AIU's other claims.  AIU's Fourth Claim for Relief fails because

10  AIU, as an excess insurer, cannot state a cause of action for equitable contribution or equitable

11  indemnity against TIG, as a primary insurer, since the right to equitable contribution or equitable

12  indemnity exists only when the insurance carriers share the same level of obligation on the same risk.

13  The Fifth Claim for Relief fails because any payments made by AIU on account of property damage

14  occurring during TIG's earlier policy period were made by AIU as a volunteer, and are not subject to

15  recovery pursuant to an equitable subrogation theory.

16  II.    ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

17         A.     AIU Excess Policies

18         AIU's First Amended Complaint ("FAC") states that AIU issued the following excess liability

19  policies to Rylock Company, Ltd. ("Rylock"): (1) policy no. BE 309-29-74, effective March 1, 1996

20  to March 1, 1998; and (2) policy no. BE 357-20-18, effective March 1, 1998 to March 1, 2002

21  (collectively, the "AIU Excess Policies").  (FAC ¶ 12).  The AIU Excess Policies provide coverage

22  for property damage which takes place during the policy periods, and which arises out an

23  "occurrence".  (FAC ¶ 13).

24         B.     TIG Primary Policy

25         The First Amended Complaint states that TIG issued a primary liability policy to Rylock,

26  policy no. 3135280, effective March 1, 1995 to March 1, 1996 (the "TIG Primary Policy").  (FAC ¶

27

28

15).[1]  The TIG Primary Policy applies to "property damage" that occurs during TIG's policy period, and arises out of an "occurrence".  (FAC ¶ 15).  There is no allegation that TIG issued any other insurance policies to Rylock, or that TIG's coverage period overlapped with AIU's coverage period.[2]

## C.    The Underlying Litigations

Rylock is a defendant in numerous litigations involving allegations that windows manufactured by Rylock were defective, and that such defects led to water intrusion resulting in property damage during the effective periods of the policies issued by several of Rylock's carriers, including TIG (the "Underlying Actions").  (FAC ¶ 20).

## D.    AIU's Second, Fourth and Fifth Claims for Relief

### 1.    Second Claim for Declaratory Relief

[1] The correct number for the TIG policy is 31342800.

[2] For the Court's convenience, below is a coverage chart showing the primary and excess policies issued to Rylock that are at issue in this litigation.  As reflected by the chart, there is no overlap between AIU's and TIG's policy periods.

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **E X C E S S** | | | | | | AIU – Umbrella 3/1/96-3/1/97 $18M/Occ. $18M/Prod. $18M/Gen. Agg. | AIU – Umbrella 3/1/97-3/1/98 $18M/Occ. $18M/Prod. $18M/Gen. Agg. | AIU – Umbrella 3/1/98-3/1/02 $18M/Occ. $18M/Prod. $18M/Gen. Agg. | AIU – Umbrella 3/1/98-3/1/02 $18M/Occ. $18M/Prod. $18M/Gen. Agg. | AIU – Umbrella 3/1/98-3/1/02 $18M/Occ. $18M/Prod. $18M/Gen. Agg. | AIU – Umbrella 3/1/98-3/1/02 $18M/Occ. $18M/Prod. $18M/Gen. Agg. |
| **P R I M A R Y** | Acceptance 3/1/92-3/1/93 $2M/Occ. $2M/Agg. $10K/Occ-Ded Prem: $240,000 | Acceptance 3/1/93-3/1/94 $2M/Occ. $2M/Agg. $10K/Occ-Ded Prem: $230,000 | Acceptance 3/1/94-3/1/95 $2M/Occ. $2M/Agg. $10K/Occ-Ded Prem: $230,000 | Acceptance 3/1/95-3/1/96 $2M/Occ. $2M/Agg. $10K/Occ-Ded Prem: $230,000 | TIG 3/1/95-3/1/96 $1M/Occ. $2M/Prod $2M/Agg. | Royal 3/1/96-3/1/97 $2M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $282,430 | Royal 3/1/97-3/1/98 $2M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $337,230 | Royal 3/1/98-3/1/99 $2M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $394,084 | Royal 3/1/99-3/1/00 $2M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $417885 | American Safety 3/1/00-3/1/01 $1M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $375,000 | American Safety 3/1/01-3/1/02 $1M/Occ. $2M/Prod. $2M/Gen. Agg. Prem: $185,000 |

1    AIU's Second Claim seeks a declaration by the Court that policies issued by Royal Insurance

2    Company of America to Rylock (the "Royal Primary Policies") are not exhausted, and that there is no

3    obligation under the AIU Excess Policies until all primary coverage is exhausted.  (FAC ¶ 34).

4    **2.    Fourth Claim for Equitable Indemnity and Contribution**

5    AIU's Fourth Claim alleges that TIG and the other primary level carriers have wrongfully

6    refused to defend and indemnify Rylock in the Underlying Actions, and that as a result AIU had been

7    forced to pay for such defense and indemnity under the AIU Excess Policies.  (FAC ¶ 42).  AIU

8    seeks contribution from TIG and Rylock's other primary level insurers of the monies that AIU

9    allegedly paid toward defense and indemnity.  (FAC ¶ 43.)  Importantly, AIU's First Amended

10   Complaint does not specify how much, if anything, AIU has paid toward defense and indemnity of

11   Rylock in the Underlying Actions.

12   **3.    Fifth Claim for Equitable Subrogation**

13   AIU's Fifth Claim is for Equitable Subrogation and claims that AIU is equitably subrogated

14   to the rights of Rylock with respect to those primary-level carriers, including TIG, who allegedly

15   breached their obligation to defend and indemnify Rylock in the Underlying Actions.  (FAC ¶ 45).

16   **III.   ARGUMENT**

17   **A.    Standard for Motion for Judgment on the Pleadings**

18   Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are

19   closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed.

20   R. Civ. P. 12(c).  A motion for judgment on the pleadings, "challenges the legal sufficiency of the

21   opposing party's pleadings." William Schwarzer et al., *Federal Civil Procedure Before Trial* ¶ 9:316

22   (2006).  Judgment on the pleadings is "proper when the moving party clearly establishes on the face

23   of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment

24   as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550

25   (9th Cir. 1990); *see also In re Dynamic Access Random Memory (DRAM) Antitrust Litigation*, 516 F.

26   Supp. 2d 1072, 1083 (N.D. Cal. 2007) ("The standard applied by the court in treating a motion for

27   judgment on the pleadings is the same as that applied by the court in considering motions to dismiss

28   under FRCP 12(b)(6).  In short, judgment on the pleadings is appropriate when, even if all material

1    facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of

2    law.").

3          As this Court has recognized, district courts "have discretion to grant dismissal on a 12(c)

4    motion, in lieu of judgment, on any given claim." *See DRAM Antitrust Litigation*, 516 F. Supp. 2d at

5    1084.   Here, dismissal of AIU's Second, Fourth, and Fifth Claims for Relief is appropriate as to TIG,

6    since even if all material facts in the First Amended Complaint are taken as true, TIG is entitled to

7    judgment as a matter of law.

8    B.    **AIU's Second Claim for Declaratory Relief is Duplicative of its Other Claims**
           **Against TIG, and Should Be Dismissed**
9

10         AIU's Second Claim for Declaratory Relief seeks an order that the Royal Primary Policies are

11   not exhausted, and that there is no obligation under the AIU Excess Policies until all primary

12   coverage is exhausted.  This declaratory relief claim is entirely duplicative of AIU's claims for

13   equitable indemnity and contribution and for equitable subrogation, inasmuch as all of the claims

14   seek to have the Court adjudicate the rights and duties of the parties under their respective policies of

15   insurance.  Under these circumstances, a declaratory judgment would serve no purpose, and the Court

16   should dismiss AIU's declaratory relief claim.

17         Under the Declaratory Judgment Act, the Court "may", but is not required to, "declare the

18   rights and other legal relations of any interested party seeking such declaration, whether or not further

19   relief is or could be sought." *See* 28 U.S.C. § 2201(a); see *also Wilton v. Seven Falls Co.*, 515 U.S.

20   277, 282 (1995) ("district courts possess discretion in determining whether and when to entertain an

21   action under the Declaratory Judgment Act ..."). The Supreme Court has held that a court properly

22   acts within its discretion by dismissing a claim for declaratory relief if "a declaratory judgment would

23   serve no useful purpose." *See Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its

24   judgment, determines after a complaint is filed that a declaratory judgment will serve no useful

25   purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing

26   the action."); *see also McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th

27   Cir. 1966) (in considering whether to hear a claim for declaratory relief, courts consider two criteria:

28   (1) if the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue;"

1   and (2) if "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

2   rise to the proceeding.").

3        The declaratory relief sought by AIU in the instant case would serve no purpose.  A

4   declaration concerning whether the Royal Primary Policies are subject to refreshment from other

5   primary carriers would serve no meaningful function, since Royal does not seek "refreshment" from

6   the other insurers.  Similarly, a declaration regarding whether AIU's coverage is triggered would

7   serve no purpose, absent a determination by the Court of whether AIU has the right to seek

8   indemnity, contribution or subrogation against the other insurers.  AIU seeks indemnity, contribution

9   and subrogation by its Fourth and Fifth Claims for Relief, and its Declaratory Relief claim adds

10  nothing in this regard.  Accordingly, the Declaratory Relief should be dismissed. *See Celador*

11  *International Ltd. v. The Walt Disney Co.*, 347 F. Supp. 2d 846, 857-858 (C.D. Cal. 2004)

12  (dismissing plaintiffs' declaratory relief claim because each of the declarations sought by plaintiffs

13  would be resolved via other causes of action).

14       Notably, in the context of insurance coverage disputes, courts have found that dismissal of an

15  insurer's declaratory relief claim is appropriate where the declaratory relief sought is duplicative of

16  the relief sought by the insurer's other claims.  For example, in *Royal Indemnity Group v. The*

17  *Travelers Indemnity Co. of Rhode Island*, 2005 WL 2176896, *2-*3 (N.D. Cal. Sept. 6, 2005), Royal

18  sued Travelers for equitable subrogation and subrogation, seeking to recover amounts incurred by

19  Royal in the defense of an underlying construction defect action.  Royal's complaint also included a

20  separate claim for declaratory relief. *Id.* at *3.  Travelers moved for judgment "on plaintiffs'

21  declaratory judgment claim on the grounds that it is duplicative of the issues to be adjudicated in this

22  action." *Id.* at *11.  The Court agreed with Travelers that Royal's declaratory relief claim served no

23  useful purpose, and accordingly dismissed Royal's claim for declaratory relief. *Id.*

24       Likewise, in the present case, AIU's declaratory relief claim serves no useful purpose, and it

25  would be uneconomical, and indeed vexatious, for the court to address the merits of the claim, given

26  that AIU's claims for equitable indemnity and contribution and for equitable subrogation present the

27  same issues.  Accordingly, the Court should dismiss AIU's Second Claim for Declaratory Relief.

28

1

2

### C.    AIU Cannot State A Claim for Equitable Contribution or Equitable Indemnity Against TIG

3    AIU, as an excess carrier, has no right to equitable contribution or equitable indemnity from

4    TIG, as a primary level carrier, since the two insurers did not share the same level of obligation on

5    the same risk to Rylock.

6    Under California law, "[a] claim under equitable contribution arises when one co-insurer has

7    paid more than its proportionate share of the loss." *Fireman's Fund Ins. Co. v. Commerce and*

8    *Industry Ins. Co.*, 2000 WL 1721080, *3 (N.D. Cal., Nov. 7, 2000). "[T]he right to equitable

9    contribution arises only when all of the insurance carriers 'share the same level of obligation on the

10   same risk as to the same insured.'" *Id., citing Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.

11   App. 4th 1279, 1294 n.4 (1998). "Excess and primary insurers do not cover the same 'risks' because

12   an excess insurer intends only to cover the risk that a loss will exceed the amount covered by the

13   primary insurer." *Id.* Thus, "'in the absence of an express agreement to the contrary, there is never

14   any right to contribution between primary and excess carriers of the same insured." *Id.* at *3, *citing*

15   *Fireman's Fund*, 65 Cal. App. 4th at 1300; *see also Reliance Nat'l Indemnity Co. v. General Star*

16   *Indemnity Co.*, 72 Cal. App. 4th 1063, 1078 (1999) ("there is no contribution between a primary and

17   an excess carrier.").

18   In *Fireman's Fund Ins. Co. v. Commerce and Industry Ins. Co.*, 2000 WL 1721080, a group

19   of excess insurers brought claims for "equitable indemnity" and "equitable contribution" against a

20   primary insurer, seeking to have the primary insurer reimburse them for a $5 million payment they

21   had made to the insured. *Id.* at *1. The court found that plaintiffs were excess insurers seeking

22   reimbursement from a primary insurer, and the parties had no express contribution agreement. *Id.* at

23   *3. Thus, the court ruled, "to the extent plaintiffs state a claim for equitable contribution, it fails as a

24   matter of law." *Id.* at *3. The court also rejected the excess insurers' equitable indemnity claim on

25   the ground "if an excess insurer may not seek partial reimbursement through contribution, it follows

26   it likely cannot seek complete reimbursement through indemnification." *Id.* at *4.

27   In *Travelers Casualty and Surety Co. v. American Int'l Surplus Lines Ins. Co.*, 465 F. Supp.

28   2d 1005, 1009-1010 (S.D. Cal. 2006), an excess insurer moved for summary judgment on its claim

1   that it was entitled to equitable contribution from a primary insurer for amounts incurred defending

2   an underlying action.  The excess insurer had issued an umbrella policy for the period November 30,

3   1995 to November 30, 1996, and the primary insurer had issued primary level policies covering the

4   period from May 1, 1991 to May 1, 1993.  *Id.* at 1010.   The district court noted the rule that "there is

5   generally no right to equitable contribution between a primary and an excess carrier ... 'because they

6   are not on the same level of liability, absent a specific agreement to the contrary.'"  *Id.* at 1026, *citing*

7   *American Casualty Co. of Reading, PA v. General Star Indemnity Co.*, 125 Cal. App. 4th 1510, 1520-

8   1521 (2005).  Applying this rule, it found that the excess insurer was not entitled to contribution from

9   the primary insurer because the excess insurer's policy period began years after the primary insurer's

10   policy periods, and "[the excess insurer] thus did not insure [the insured] for the 'same risk' at the

11   same level as did [the primary insurer]."  *Id.* at 1026-1027.  Thus, the district court denied the excess

12   insurer's motion for summary judgment on a theory of equitable contribution.  *Id.*

13   In *Travelers Casualty & Surety Co. v. Ins. Co. of the State of Pennsylvania*, 2006 WL 149005,

14   *1 (N.D. Cal., Jan. 19, 2006), plaintiff Travelers alleged a claim for equitable contribution relating to

15   payment of a settlement in an underlying action.  In addressing the claim, the district stated: "'[e]very

16   California case of which we are aware has enforced an insurer's contribution claim only where the

17   other insurer was also obligated to pay on the claim.'"  *Id.* at *2, *citing Reliance National Indemnity*

18   *Co. v. General Star Indemnity Co.*, 72 Cal. App. 4th 1063, 1076 (1999).  "No right to contribution

19   exists between insurers at the different risk levels."  *Id.*  The court found that "[t]his rule barring

20   cross-risk-level contribution ... bars contribution for payments made under Travelers' *excess* policies

21   from ISOP's *primary* policies."  *Id.*

22   Similarly, in the present case, AIU and TIG did not share the same level of obligation on the

23   same risk to Rylock.  To the contrary, there was no overlap between their respective coverage

24   periods, and AIU covered only excess level losses as opposed to TIG which covered Rylock's

25   primary level losses.  Accordingly, as a matter of law, AIU has no right to equitable contribution or

26   equitable indemnity from TIG.

27

28

TIG'S MOTION FOR JUDGMENT ON THE PLEADINGS          -9-

1

**D.    AIU Has Not Stated A Claim for Equitable Subrogation Against TIG**

2

AIU also seeks to shift liability for the Underlying Actions to TIG pursuant to its equitable

3

subrogation claim. The equitable subrogation claim fails as to TIG because any payments made by

4

AIU on account of property damage first manifesting during TIG's policy period were voluntary in

5

nature, and thus not recoverable under an equitable subrogation theory. Also, AIU's equitable

6

subrogation claim is defective because the First Amended Complaint does not allege that AIU has

7

paid a sum certain to Rylock in satisfaction of obligations for which TIG was liable.

8

**1.    Overview of Equitable Subrogation**

9

"Principles of equitable subrogation rather than equitable contribution apply to disputes

10

between insurers when the insurers do not share the same level of risk. In contrast to equitable

11

contribution, the aim of equitable subrogation is to place the burden for a loss on the party ultimately

12

responsible for it and by who it should have been discharged, and to relieve entirely the insurer or

13

surety who indemnified the loss and who in equity was not primarily liable for it." *Travelers*, 465 F.

14

Supp. 2d at 1027.

15

"The essential elements of an insurer's cause of action for equitable subrogation are as

16

follows:

17

18

19

     (a)  the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer;

20

21

     (b)  the claimed loss was one for which the insurer was not primarily liable;

22

23

     (c)  the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable;

24

     (d)  the insurer has paid the claim of its insured to protect its own interest and not as a volunteer;

25

26

     (e)  the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer;

27

28

     (f)  the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends;

TIG'S MOTION FOR JUDGMENT ON THE PLEADINGS     -10-

(g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and

(h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Travelers*, 465 F. Supp. 2d at 1027, n.22, *citing Fireman's Fund*, 65 Cal. App. 4th at 1292.

### 2.    Any Payments Made by AIU for Losses for Which TIG Is Primarily Liable Were Voluntary

In a hollow attempt to plead a valid equitable subrogation claim, AIU's Fifth Claim for Relief incorporates its conclusory allegation that "[e]quity dictates that AIU obtain from … TIG … complete or partial reimbursement of the monies that AIU paid toward the defense and indemnity of Rylock in the pending claims because, in doing so, AIU satisfied [TIG's] obligations." (FAC ¶ 40).

The allegation that AIU made defense and indemnity payments in satisfaction of TIG's obligations is simply untrue, as evidenced by AIU's inability to allege any specific payments it made in satisfaction of TIG's obligations. Even accepting that the allegation is true, however, it is evident that any such payments were made by AIU as a volunteer, since AIU provided excess level coverage for property damage that occurred between March 1, 1996 and March 1, 2002, and had no obligation to pay for property damage that first occurred and/or manifested itself during TIG's policy period between March 1, 1995 and March 1, 1996. *See Great American West, Inc. v. Safeco Ins. Co. of America*, 226 Cal. App. 3d 1145, 1150 n.4 (1991) (noting that an insurer which paid for property damage already manifested in prior policy periods and hence already covered by other insurers "of course … did so as a volunteer because post manifestation carriers have no liability for continuing property damage."). As demonstrated below, the voluntary nature of any payments made by AIU for losses for which TIG was primarily liable bars its recovery under an equitable subrogation theory.

In *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1592-1593 (1994), an excess insurer brought an action against a primary insurer, seeking equitable subrogation on the ground that the primary insurer had misallocated the proceeds from its primary policies so as not to exhaust all the policies covering the years before the excess policy was in effect, thereby requiring the excess insurer to pay benefits under its policy. The court found that assuming the excess insurer

1    was factually correct, its payment presented amounts for which it was not liable, since the underlying

2    property damage had manifested in earlier policy years, and hence the insurers in those years, and not

3    the excess insurer, was liable. *Id.* at 1598 and n.11. Since the excess insurer's payment was as a

4    volunteer, equitable subrogation was unavailable to it. *Id.* at 1598. The Court of Appeal noted that

5    the excess insurer could not have reasonably believed that it might have had liability for damages

6    which accrued during the primary carrier's earlier policy period, because California courts have

7    "definitively declared a later insurer was not liable for damages manifested in an earlier policy

8    period." *Id.* at 1598, n.12.

9        Based on the foregoing, any payments that AIU made in satisfaction of property damage that

10    occurred during TIG's earlier policy period were made by AIU as a volunteer, and hence AIU's

11    equitable subrogation claim is barred. *See generally Employers Ins. of Wausau v. Musick, Peeler &*

12    *Garrett*, 948 F. Supp. 2d 942, 945 (S.D. Cal. 1995) ("an insurer cannot assert subrogation rights

13    based on a claim that was paid as a volunteer.").

14                    **3.    AIU Has Not Alleged any Specific Amounts It Paid**

15        AIU's equitable subrogation claim is also defective because it has not alleged damages in a

16    liquidated amount. Under California law, a requisite element of a cause of action for equitable

17    subrogation is "the insurer's damages are in a stated sum, which is usually the amount paid to the

18    insured, assuming the payment was not voluntary and was reasonable." *See Gulf Ins. Co. v. TIG Ins.*

19    *Co.*, 86 Cal. App. 4th 422, 432 (2001) (holding that insurer could not pursue equitable subrogation

20    claims where there was "no indication that there was an amount in excess of [the underlying claim]

21    for which the insured was liable and for which [the insurer] paid."). AIU's inability to comply with

22    this fundamental requirement for pleading an equitable subrogation claim further warrants dismissal

23    of its equitable subrogation claim.

24    **IV.    CONCLUSION**

25        For the foregoing reasons, the Court should dismiss AIU's claims for declaratory relief,

26    equitable indemnity and contribution, and equitable subrogation as to TIG.

27

28

TIG'S MOTION FOR JUDGMENT ON THE PLEADINGS            -12-

1   DATED:   August 28, 2008

                                              LAW OFFICES OF SEMHA ALWAYA

2

3                                              Semha Alwaya
                                              Attorneys for Defendant

4                                              TIG INSURANCE COMPANY
                                              ERRONEOUSLY SUED HEREIN AS TIG

5                                              SPECIALTY INSURANCE COMPANY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28